## McKALLIP *et al.* v. GEESE *et al.*

No. 1139.   Opinion Filed September 26, 1911.

(118 Pac. 586.)

1. **PARTNERSHIP—What Constitutes—Nature of Contract.** A contract, by which one person leases to another machinery and tools for drilling an oil well, under which the lessee takes possession of the drilling outfit, works on the well, agrees to pay the lessor 90 per cent. of the net profits derived from the drilling, gives to the lessor as security for his rent an order on the person for whom the well is being drilled for all moneys that are to be paid the lessee, and directs the lessor to pay the operating expenses out of such moneys, does not create a partnership between the lessor and the lessee.

2. **PARTNERSHIP — Estoppel — Existence of Relation — Pleading.** Where there is no partnership existing as a matter of law, a defendant cannot be charged as a partner, unless his conduct is such as to estop him from denying the partnership; and a plaintiff who relies on such conduct must plead the estoppel.

(Syllabus by Ames, C.)

*Error from Okmulgee County Court; M. M. Alexander, Judge.*

Action by Fred Geese and others against J. C. McKallip and others.   Judgment for plaintiffs, and defendants bring error.   Reversed and remanded.

Fred Geese, one of the defendants in error, as plaintiff below, brought an action in the county court of Okmulgee county against J. C. McKallip, L. G. Wiley, and others, alleged to be partners doing business under the firm name of McKallip Bros. & Wiley.   He alleged that he had performed labor for the firm, for which he sued.   Others brought similar actions in the same court, and by consent, these actions were consolidated and tried together.

J. C. McKallip and all the other defendants, except Wiley, are partners, doing business at Houston, Tex., under the firm name of McKallip Bros.   Wiley is a resident of Oklahoma, and is not a member of the Houston firm.   McKallip Bros. owned a set of drilling tools and machinery located in Oklahoma.   Wiley

entered into a tentative agreement with one Reese for one drilling of a well, and then approached McKallip Bros. to rent the drilling outfit. The negotiations resulted in a contract, which recited that McKallip Bros. owned the drilling outfit, which was not at that time being used by them; that Wiley represented to them that he had a contract with Reese for drilling a well to a depth of 2,000 feet, under which contract Wiley was to furnish labor and fuel; that standard rigs, casings, etc., were to be furnished by Reese, and he was to pay for the pulling of casing; that Wiley desired to rent the tools, engine, and boiler of McKallip Bros. for a period of probably 30 days, and was willing to pay therefor 90 per cent. of his net profits. In order to secure such rental, he gave to McKallip Bros. an order on Reese for all money which might become payable to him under the contract, and the rental contract was made, subject to the approval by McKallip Bros. of the contract between Wiley and Reese. After these recitals, the contract is as follows:

"This contract is therefore made upon a condition precedent, namely: That the terms and form of said second party's contract with Reese and associates be so satisfactory to first parties, and it is so understood and agreed. Therefore further witnesseth:

"First. First parties do hereby rent unto second party said string of tools, engine and boiler, for purpose of putting down such well, it being contemplated that the same will not be required for a longer period of time than thirty days. Second party shall be entitled to immediate possession thereof after receipt of wire from said McKallip advising that terms and form of said contract of second party with Reese and associates are satisfactory to first parties; but, shall not be entitled to possession in any other event.

"Second. Second party, in said event, shall immediately remove the same to said location, and commence the drilling of such well at the earliest possible moment. He shall himself work one tower thereon, as well as do each other act and thing looking to the early and successful completion of such job.

"Third. (a) As rental therefor, second party does agree to pay first parties an amount equivalent to 90 per cent. of the net profits realized by him in the premises, or in any wise connected therewith, or growing out thereof.

"(b)   In order to secure such rental to first parties, he, second party, is executing herewith an order in favor of said J. C. McKallip on said Reese and associates, requesting and directing them to pay over unto said McKallip any and all sums of money whatsoever to which he may become entitled by reason of working on and drilling such well; and, more especially all moneys which he may become entitled by reason of said contract with him, or any matter in any wise incident, connected with, or growing out thereof.

"(c)   Second party, does also here now transfer, assign and set over, unto said J. C. McKallip (one of the first parties, and for the joint benefit of the first parties in proportion as they are each interested in said string of tools, engine and boiler), any and all sums of money whatsoever to which he, second party, may become entitled by reason of working on and drilling such well; and, more especially all moneys which he may become entitled by reason of said contract with Reese and associates, or any matter in any wise incident, connected with, or growing out thereof.

"Fourth.   (a)   When the said moneys are collected from said Reese and associates by said McKallip, the latter shall pay out of same such sums of money as is required to cover such indebtedness as second party shall have properly incurred in drilling such well; in this regard, it is contemplated that second party will incur a reasonable expense on account of moving and returning property hereby leased to him, labor and fuel oil; it is contemplated that second party, being a driller, and desiring to work as such, will draw as wages for himself $6.00 for each tower he spends in actual drilling.   No other expense shall be incurred by second party.   The residue shall belong and be paid: 90 per cent. to first parties as rental, and, the remainder to second party.

"(b)   Fuel oil shall be purchased by second party of first parties; deliveries are to be made on their lease at reasonable times and places and they shall receive fifty cents per barrel therefor.

"Fifth.   (a)   An inventory in duplicate is to be made of property removed from first parties' lease by second party; one shall be signed by second party and kept by first parties, the other shall be given to second party.

"(b)   The property so removed by second party shall be returned to its present location by second party, and at his expense, just as soon as the same are free, and shall be returned in

as good a condition as when removed, reasonable wear and tear excepted.

"Sixth.   All settlements as between the first parties and second parties are to be made in the city of Houston, Harris county, Texas."

*Ralph H. Ellison* and *William M. Matthews,* for plaintiffs in error.

*Belford & Hiatt* and *G. E. Cassidy,* for defendants in error.

Opinion by AMES, C.   (after stating the facts as above). The first question to consider is whether or not the contract which has been set out created a partnership between McKallip Bros., the lessors, and Wiley, the lessee.

Comp. Laws 1909, sec. 4959, defines partnership as follows:

"Partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them."

In Bates on Partnership, par. 1, it is said:

"A partnership is the contract relation subsisting between persons who have combined their property, labor, or skill in an enterprise or business as principals for the purpose of joint profit."

In *Citizens' Nat. Bank, of Chickasha v. Mitchell,* 24 Okla. 488, 501, 103 Pac. 720, 726, the court said:

"A partnership exists as a result of a voluntary contract between the parties, and never solely by operation of law.   *Causler v. Wharton,* 62 Ala. 358; *Cowles v. Garrett,* 30 Ala. 341; *Haycock v. Williams,* 54 Ark. 384, 16 S. W. 3; *Einstein v. Gourdin,* 4 Woods, 415, 8 Fed. Cas. No. 4,320; 22 Am. & Eng. Ency. of Law (2d Ed.) p. 14, footnote 3.   It is a relation arising out of a contract to do certain things and exists only where the parties intend to enter into a contract of partnership and, unless they have estopped themselves by holding themselves out to the world as partners, their intention as derived from the contract is decisive of the question."

We do not undertake the difficult task of giving any general definition of a partnership, but content ourselves with determining whether under the facts of this case the contract created one.

By this contract, Wiley purports to rent the machinery of McKallip Bros., and as security for the payment of the rent he gives them an order upon Reese for all moneys coming to him. McKallip Bros. are to receive 90 per cent. of the net profits, and Wiley, for his services as a driller, is to draw wages. The contract with Reese is made by Wiley, and McKallip Bros. are not parties to it. It is recited in the contract that it will take about 30 days to drill the well. Profit sharing is usually one element entering into a partnership, but another element, as expressed in our statutes, is "carrying on business together," or, as expressed in Bates' definition, it is the "relation subsisting between persons who have combined their property, labor, or skill in an enterprise or business as principals." As the relation is one of contract, and the contract is in writing, it becomes a matter of law for the court to determine whether this contract created a partnership, and we do not find in it any element of joint ownership, of. carrying on business together, or of a combination of capital, labor, or skill as principals.

In *Rider v. Hammell*, 63 Kan. 733, 66 Pac. 1026, 1027, a somewhat similar contract was involved, although in that case the lessor of the drilling outfit was to receive 25 cents per foot, instead of a percentage of the net profits, and the court in holding that this contract did not create a partnership said:

"Rider was the owner of a machine and appliances used for boring for oil, coal, gas, etc. He agreed with McCarty to rent it to him, together with the tools, ropes, and other appliances then used in operating said machine. He also agreed to furnish new cables when needed, and pay one-half of the costs of certain tools, which in the operation of boring wells were liable to be lost in a well. McCarty was to operate the machine at his own expense, and pay Rider 25 cents per foot for all wells completed. It was also provided that if, in drilling a well, tools should get lost in the well, and by reason thereof the well could not be completed, Rider was to receive only his proportion of what should be collected at the rate of 25 cents per foot. It was also agreed that Rider should share equally in any right of development of wells drilled by McCarty, in case any should be worth operating. This contract was to terminate on 30 days' notice. Does this agree-

ment constitute a partnership between these parties as to themselves? We do not think it does. In the first place, it does not provide that they shall have a joint interest in the business or the profits. Rider was not to receive any of the profits. He was to get 25 cents per foot for all wells completed, regardless of profit. It did not make any difference to Rider what McCarty's profits were, or if he actually sustained a loss. In either event, he was to receive the same pay for the use of the machine. It was of no consequence to Rider whether McCarty's expenses were much or little. It neither increased nor diminished the rental value of the machine. This agreement was not a combination of property, labor, and skill in an enterprise or business as principals. The existence of a partnership implies the relation of principal and agent. This is the real test. *Seabury v. Bolles,* 51 N. J. Law, 103, 16 Atl. 51, 11 L. R. A. 136. Rider was not a principal. He had no control or supervision over the contracts made, or of the work to be performed thereunder. McCarty might regulate his own charges and negotiate for his pay at any time and in any manner he desired, without consulting Rider; nor was Rider to receive his pay out of the money collected for boring wells. For anything due him, he became a general creditor of McCarty. The law is now well settled that where a person loans or advances money or goods to another, to be invested in some business or enterprise, the lender to share in the profits as or in lieu of interest on, or in repayment of, such loans or advances, it does not constitute a partnership. Neither will it constitute a partnership as to third persons, unless the acts of the parties in furtherance of the agreement between themselves amount to such a holding of themselves out as partners as that third persons are misled into a reasonable belief that a partnership exists in fact."

In *Nofsinger v. Goldman,* 122 Cal. 609, 55 Pac. 425, the first paragraph of the syllabus is as follows:

"Merchants who owned a threshing outfit let it in consideration of half of the net profits of its operation, but the lessees were to have the exclusive management of it. In accordance with their custom, they furnished supplies on credit for operating the machine and money to pay the help to be repaid them after the close of the threshing season. The lessees were operating another outfit, which they owned, and for which they purchased supplies on credit from the lessors; and to distinguish the two accounts, and without the lessors' knowledge, the bookkeeper charged the

advancements for the leased outfit to a firm name composed of the names of lessees and one of the lessors. One of the lessors stated to third persons that they were running a threshing outfit, and the bills for the threshing done with such outfit were settled at their store. *Held,* that there was no actual partnership."

The whole subject and the effect of profit sharing upon the creation of a partnership is reviewed in an elaborate note in 18 L. R. A. (N. S.), extending from page 963 to 1106, and, after reviewing all the decisions on the subject, the author of the note states his conclusions at page 1105, as follows:

"In spite of all the discordant decisions, it is reasonably safe, whenever the profit-sharing element is involved in a legal controversy relating to partnership or partnership liability, to accept as sound law certain propositions, which may be grouped in two classes according as the litigation is between or among the profit sharers alone, or between them and third perons. In the first class are the following statements: (1) Whether profit sharers between or among themselves are or are not partners is to be determined by their intention to form or not to form a partnership. (2) That intention is determined by their contract, if it is in writing. (3) The ordinary legal rules for the construction and interpretation of written instruments apply to partnership and profit-sharing contracts. (4) If the profit-sharing contract is unwritten and oral, the speech and conduct of the parties in relation to its subject-matter prove their intention to be or not be partners."

We concur in these conclusions, and the application of them to the contract in question makes it clear that the written instrument was not intended to and did not create a partnership.

The next question which arises is whether, under the facts of this case, the defendants composing the firm of McKallip Bros. are estopped by their conduct from denying that they were partners of Wiley. The petition alleges that the defendants were partners, doing business under the firm name of McKallip Bros. & Wiley. The answer denies this under oath. There is no plea of estoppel, and under the decisions of this court, in order to avail oneself of estoppel, it must be pleaded. *Holt v. Holt,* 23 Okla. 639, 102 Pac. 187; *Cooper v. Flesner,* 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180.

Notwithstanding this condition of the pleadings, however, we have examined the evidence with care, and do not believe it is sufficient on which to base an estoppel. The general principles governing on this point are stated in the same note previously referred to (18 L. R. A. [N. S.] 1105), as follows:

"In the second class—when there is a controversy between profit sharers and third persons—the following statements: (1) That actual partners, whatever their private agreements and however secret they have kept their relation, are liable for partnership dobts. (2) That a profit sharer who is not a real partner is liable for partnership debts, if he has held himself out, or knowingly permitted others to hold him out, as a partner to creditors who have given credit to the partnership in ignorance of his actual relation to it. (3) That profit sharing is evidence of the partnership relation; but that it is not conclusive evidence of it, but at most *prima facie* or presumptive evidence of the partnership relation. (4) That this presumption of partnership may be overcome by countervailing proof. (5) That, when the profit sharer is simply an agent or servant, one who furnishes property, a lender of money, or a mere creditor, who receives the profits as compensation for his services, or the use of his property or money, or in order to collect his debt, without more, he is not liable as a partner, and the presumption is overthrown."

At the conclusion of plaintiff's evidence, members of the firm of McKallip Bros. interposed a demurrer to the evidence, which the court overruled, and thereafter further evidence was offered. Considering the evidence of the plaintiff only, as well as all the evidence offered, we are of the opinion that there was error in overruling the demurrer to the evidence, and that judgment should have been rendered in the lower court for all the defendants, except Wiley.

We therefore believe the judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.

All the Justices concur.