# MUNICIPAL PAVING CO. v. HERRING *et al.*

No. 4865. Opinion Filed July 27, 1915.

Ruling as to Costs, August 3, 1915.

(150 Pac. 1067.)

1. **CORPORATIONS—Civil Action—Process—Sufficiency.** A summons was issued for defendant, under section 1339, Rev. Laws 1910, and served upon the Secretary of State. No showing of any kind was made that defendant had not appointed a service agent in this state, or that one of its officers did not reside in the state upon whom service could be made. **Held,** in the absence of a showing by the defendant that it either had a service agent or an officer in the state upon whom process could be had, the service was sufficient.

2. **PARTNERSHIP—Relation—Intention of Parties.** Where the parties to a contract alone are concerned, a copartnership is not created, except where the parties so intend it, by a voluntary agreement to that effect.

3. **SAME—Requisites.** In order to constitute a partnership inter sese there must be : (a) An intent to form the same; (b) generally. a participating in both profits and losses; (c) and such a community of interest, as far as third persons are concerned, as enables each party to make contracts, manage the business, and dispose of the whole property.

4. **CORPORATIONS—Powers—Partnership.** A corporation cannot enter into a partnership agreement with an individual.

5. **SAME—Joint Venture.** A corporation can enter into a joint venture with an individual, if the nature of the contract is in line with the business its charter authorizes.

6. **PARTNERSHIP — Relation — Sharing Losses.** In partnership agreements, if the contract is silent on that point, there is an implied agreement that the partners shall share in the losses.

7. **SAME—Interest in Profits.** If the interest in the profits is joint, then that generally makes it a partnership, but a common interest in the profits does not.

8. **SAME—Control and Right to Profits.** Where the defendant company retained control and possession over the entire business and the plaintiff had no legal or equitable right in the profits as profits, but only a contractual right to have his share paid over to him by the company, **held** not to constitute a "partnership."

9. **SAME—Members—Agency.** Every member of a partnership is a principal, having a joint interest in the partnership property, and is an agent for his associates.

10. **SAME—Relation—Contracts.** Contract examined, and **held** not to constitute a "partnership."

11. **CORPORATIONS—Foreign Corporation—Attachment—Proof of Issue and Levy.** Where it was conceded the defendant was a foreign corporation, and the evidence shows it was indebted to plaintiff upon a contract, where an attachment sued out was not called into question at the trial, it was not necessary for plaintiff to make proof of the issue and levy of the attachment.

(Syllabus by Mathews, C.)

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Action by D. A. Herring and another against the Municipal Paving Company. Judgment for plaintiffs, and defendant brings error. Modified and affirmed.

*J. J. Eckford* and *C. A. Galbraith,* for plaintiff in error.

*C. F. Green* and *J. F. McKeel,* for defendants in error.

Opinion by MATHEWS, C. Action by D. A. Herring and Bert Hahn against the Municipal Paving Company, for recovery upon a contract. Judgment for plaintiffs, and defendant appeals. The parties will be designated as in the court below.

The defendant contends that its motion to quash service should have been sustained. The defendant is a foreign corporation, with its offices in Dallas, Tex. It appears from the record that plaintiff filed his action in the district court of Pontotoc county and had summons issued, directed to the sheriff of that county, who returned the same unserved, stating that the defendant was not found in that county. Thereafter was issued a sum-

mons to defendant under section 1339, Revised Laws 1910, directed to the sheriff of Oklahoma county, and served upon the Secretary of State, as said section provides. Defendant insists that such service was authorized only when the foreign corporation has not designated an agent in this state upon whom process may be served, and that there must be the proper showing that the defendant had not appointed a service agent in this state, or that one of its officers did not continuously reside in the state, and without such showing the service was void if made only upon the Secretary of State, as provided in section 1339. The service had in this case was statutory, and we know of no rule of law that requires the plaintiff to go beyond the requisites of the statute itself, and we can see no good reason for such a rule. Plaintiff elects to proceed against the defendant under this section, and by having service made upon the Secretary of State impliedly states that the conditions under which the statute authorizes such service exists. To require him to make an affirmative showing to that effect would be to require him to prove something that no one knew better than the defendant itself. Of course, if it had appointed a service agent, that fact would appear of record, but it might be impossible for plaintiff to know whether or not an officer of the company was residing in the state upon whom service might be had. Even in its motion to quash, defendant does not allege that it had a service agent in the state, or that one of its officers resided in the state, but simply demands that plaintiff prove that it did not have one or the other. We hold the service sufficient, in the absence of a showing by the defendant that it either had a service agent or an officer in the state upon whom process could be had.

The contract out of which this action arose is as follows:

"STATE OF TEXAS, COUNTY OF DALLAS.

"This agreement made and entered into by and between D. A. Herring of Pontotoc county, Okla., and Bert Hahn of Lamar county, Texas, parties of the first part, hereinafter known as Firm, and the Municipal Paving Company, of Dallas county, Texas, incorporated under the laws of the State of Texas, parties of the second part, hereinafter known as Company, witnesseth:

"That said Firm owns leases made with certain individuals in Oklahoma, on lands in Pontotoc county, Oklahoma, containing rock asphalt, as follows: One of said leases on about 100 acres of land near Ada, Oklahoma, being in the name of D. A. Herring, but is owned by D. A. Herring and Bert Hahn jointly, the other lease on 260 acres land near Ada, Oklahoma, known as the Varner lease, are in the names of D. A. Herring and Bert Hahn, copies of which leases are attached hereto, and made a part of this agreement. The Firm agrees to mine, crush, and ship asphalt to be taken from its said asphalt mines in said Pontotoc county to said Company of such quality and in such quantities as the Company may require in carrying out paving and other contracts made, or to be made, by said Company.

"All machinery, tools and implements now at the mines in Pontotoc county, Oklahoma, are to remain the property of said Firm. Of said Firm, D. A. Herring is to devote his time to getting out, crushing and shipping of rock asphalt from the mines, of which he is to have supervision. Bert Hahn agrees to supervise the work of laying paving where contracts have been made or to assist in such work, and to assist in the promoting of new contracts. Both members of Firm are to assist the Company in procuring contracts. Each of the members of the Firm is to receive cash advances up to the amount of one hundred ($100.00) dollars monthly while employed, or working in the interest of rock asphalt contracts, by

which name such transactions between the parties shall be known, and such sums of money advanced shall be returned to the Company out of the earnings of rock asphalt contracts. It is agreed that the rock asphalt and other material furnished by the Firm to the Company shall be at actual cost of production, plus the royalty, 10 cents ton, to be paid. It is agreed that in the contracts which have been awarded to Ockander Bros. in Sherman and the Municipal Paving Company in Dallas, rock asphalt furnished by the Firm is to be used, and that the same terms and provisions as are to be applied to future contracts shall apply to these two. It is understood and agreed that the Company shall make efforts to secure contracts for paving streets and roads with rock asphalt in Texas, Oklahoma, Louisiana, and Kansas, and be reimbursed for any expenditure of money in such promoting. It is also agreed that any machinery, tools and implements that may be bought or leased by the Company for the purpose of laying rock asphalt paving or doing any part of the work shall be proper charge against such contracts and the Company shall be reimbursed for such advances out of the earnings of the rock asphalt contracts.

"No contract shall be entered into except by the Company, and which shall be first agreed upon between the two parties. It is agreed that the profits of rock asphalt contracts shall be equally divided between the two parties hereto, but no distribution of profits shall take place until all advances made in cash to the Firm have been paid, and all machinery, tools, and implements bought and promoting and other expenses shall have been paid, as well as losses, if any, that may be sustained on contract. It is agreed that the Firm shall keep account of all expenditures made by them and send weekly statements thereof to the Company, which shall also keep account of all payments made by it and furnish monthly statements to the Firm.

"This agreement shall continue in force for the term and life of the leases on asphalt land.

"Signed in triplicate.

"Dallas, Texas, 6-30-1910."

In his petition, it is alleged that D. A. Herring is the real party in interest, and that Bert Hahn is a nominal party only, having no interest in the results of the suit.

It will be noted in the contract that plaintiff was to devote his personal attention to getting out and crushing rock asphalt from the mines near Ada, Pontotoc county, and shipping the same to the defendant company at such points as directed by the company, where the asphalt was to be put down in street paving. It was also agreed that the company should advance to the plaintiff $100 per month, which was to be refunded to the company out of the earnings from paving contracts, the asphalt to be furnished the company at actual cost of production, plus a royalty of 10 cents per ton, which it seems was to be paid to the lessor of the asphalt mine. It appears that in pursuance of this contract the plaintiff Herring employed quite a number of hands who worked in and about the mines getting out, hauling, and crushing asphalt, commencing on the 1st day of July, 1910. The pay roll for the employees at the mine was made out by the plaintiff and sent each week to the company at Dallas for their inspection, then the company would send the money to plaintiff at Ada to pay off the hands working in the mines. This continued for the months of July, August, and September, during which time the plaintiff was to receive $100 per month from the company, as per contract, and the funds to pay off the hands, which plaintiff claims were sent to him more or less irreguarly, and not in sufficient amounts at times to meet the whole pay roll, at which times he advanced the balance himself. At the

end of September, the plaintiff was replaced by the company in his superintendence at the mines by one Sigler. After that this suit was instituted by plaintiff, wherein he claimed that the company was indebted to him in the sum of $813.59 for money expended and advanced by him in the operation of the mines, an itemized statement being attached to his petition, and the further sum of $600, which plaintiff claimed was due him for his service in looking after the mining, crushing, and shipping of asphalt, as stipulated in the contract.

Defendant company answered that plaintiff failed to furnish an itemized weekly expense account, and that he failed to conduct the work of the mines in a skillful manner, as he agreed to do, so that it was compelled to take the same out of his hands and place another in charge thereof, and specifically denied that it was indebted to plaintiff in any sum, but alleged that it had sent to plaintiff the sum of $4,607.54, and demanded an accounting. Defendant denied that it was to pay plaintiff $100 per month as a salary, but averred it was to advance that sum per month as a loan, which was to be accounted for in the settlement, and that the retention of the same was contingent upon whether or not the enterprise was profitable. By way of cross-petition defendant asked for an accounting, averring that plaintiff wrongfully expended the money sent him in mining asphalt which he sold for his benefit to other parties. Defendant pleaded further that, in the prosecution of certain contracts of paving, it sustained a loss of $12,220.80, as shown by attached itemized statement, and claims that under the contract, plaintiff and his partner, Hahn, were liable for one-half of said loss, to wit, $6,110.40, for which it asked judgment.

The cause was submitted to the court by agreement, who made findings of facts and conclusions of law and rendered judgment against the defendant in the sum of $426.31.

The first assignment upon the merits is that the court erred in certain findings, which will be considered in order as presented.

In the beginning it becomes necessary to decide three questions: (1) Is the written contract entered into between the parties a co-partnership agreement? (2) Is plaintiff liable to defendant for the $100 advanced to him under the contract, monthly, if the profits in the business are not sufficient to reimburse defendant therefor? and (3) is plaintiff liable to defendant under the contract for his part of the losses incurred in the conduct of the business?

There are but few more difficult or uncertain propositions to be met with in the field of law than that of deciding whether or not a given state of facts constitutes a partnership agreement. The difficulty arises, not in ascertaining the legal principles which go to constitute a partnership, but in applying them to the varying facts of each particular case. Added to the difficulty which one meets along this line is the still greater one of an immense number of widely divergent, inharmonious, and conflicting opinions which are to be found on this subject. After an extended review of the decisions at hand thereon we admit that we have long halted between the two opinions, and even now, after deciding that the contract under consideration does not constitute a partnership agreement, the conclusion is not entirely satisfactory to us, and must be less so to the party to whom it is adverse.

Our statutes define a partnership (section 4445, Rev. Laws 1910), and our courts have also passed upon the same question. *McKallip et al. v. Geese et al.*, 30. Okla. 33, 118 Pac. 586. Where the rights of third parties intervene there can be a partnership by estoppel, but where only the parties themselves are concerned, as in the case at bar, a partnership is not created, except where the parties so intend it by a voluntary agreement to that effect, and not by operation of law. *Couch v. Woodruff*, 63 Ala. 466. No definite rule has ever yet been laid down which can be said to be a conclusive test as to whether or not a partnership exists *inter sese* from a given state of facts, but there must be, to constitute the same: (a) An intent on the part of the alleged partners to form a partnership; (b) there must be a participation generally in both profits and losses; (c) there must be such a community of interests as enables each party to make contracts, manage the business, and dispose of the whole property.

(a) In considering the contract in the case at bar and applying the above rules, we will first examine the same in order to try to arrive at the intentions of the parties, and if we are able to do so, then their intention must control. It is almost an invariable custom, in drawing up articles of co-partnership agreement, to head the written instrument with the words, "Co-partnership Agreement," or words of similar import and meaning. In the contract here this was not done, and it is denominated an agreement, and nowhere in the entire instrument is there a hint or suggestion that it was intended to be a partnership agreement. Most certainly, if such was their intent, the same would, in some way, have been divulged in some manner in the instrument itself.

It is an elementary proposition of law that a corporation cannot enter into a partnership agreement with an individual. *Breinig. et al. v. Sparrow,* 39 Ind. App. 455, 80 N. E. 37. It appears to us that this is a very strong indication that the parties did not intend to enter into a partnership agreement here. All persons are presumed to know the law, and it is to be presumed that this contract was entered into with full knowledge that the defendant corporation could not enter into a partnership agreement that would be binding upon or enforceable by either party, and the equally strong presumption would follow that neither would desire or intend to make a contract which the law would not enforce.

We are inclined to the opinion that the contract entered into partakes more of the nature of a joint venture, which the corporation did have the power to enter into, if the nature of the contract is in line with the business its charter authorizes, a matter about which there is no dispute. *Mestier & Co. v. Chevalier Pavement Co.,* 108 La. 562, 32 South. 520.

(b) The contract is silent upon the question whether or not plaintiff shall share in the losses incurred in the prosecution of the business. In partnership agreements, if the contract is silent on that point, there is always an implied agreement that the partners shall share in the losses, if any, but in the case at bar, as we construe the contract, there is no such an agreement for plaintiff to share in the profits as to bring it within the rule that the sharing of profits itself generally constitutes a partnership.

If the interest in the profits is joint, then that generally makes it a partnership, but a common interest in the profit does not. If the interest in the profits is that

of an owner, if there be a joint seizure, if the parties each have the right, as such owners, to dispose of the profits, then there is a partnership. If one may dispose of or control the profits as much as the other, then there is a joint interest, but if the plaintiff's interest be only a common interest in the profits, that is, if he have no title jointly with the company with the right to control as owner over the profits, but, with only a common interest in them because the profits measure what amount he shall receive for the asphalt taken from his mine, then he is not a partner. *Sankey v. Iron Works*, 44 Ga. 228. The contract itself does not say that the plaintiff shall share in the losses, and from an examination of the same it is manifest that the plaintiff had no seizure of its profits, and had no more control thereof than a stranger to the contract. The defendant company retained absolute control and possession over the entire business, the plaintiff had no legal or equitable right in the profits as profits, but only a contractual right to have his share paid over to him by the company, when earned, and we think in this contract the company simply contracted to pay the plaintiff a certain part of the profits, if any were made, as payment for the asphalt mined from plaintiff's lease. That this conclusion is true is apparent from the fact that no other provision was made in the contract for remunerating the plaintiff for the asphalt other than his sharing in the profits.

(c) The plaintiff, under the terms of the contract, had no voice in the management of the business, except in a minor capacity at the mines, and this even was under the direction of the company. The contract did not give him the right to bind the company or the property as a member of a partnership may bind the firm and the

firm property. Not only did his status not rise to the dignity of a member of a firm, with a voice in the management of its affairs equal with the other members, but his standing was so precarious that we find him summarily discharged from employment within three months after his signing the contract. It comes with poor grace that the defendant should now insist that plaintiff was a partner, which carries with it the right to control and a voice in the management, when they ousted him from their employ with as little ceremony as if he had been the humblest servant.

Closely related to the test now being considered is that of principal and agent. Every member of a partnership is a principal having a joint interest in the partnership property, and is an agent of his associates. *Hanthorn v. Quinn*, 42 Or. 1, 69 Pac. 817. This is considered almost a universal test, but it also has its exceptions.

While it is the true rule that the intent of the parties, when they have entered into a written contract, must be deduced from the instrument itself, yet in this case, looking beyond the contract to the evidence introduced at the trial, it is conclusive that neither of the parties to the contract ever intended or thought that they were executing a partnership agreement, and the same was not treated as such afterwards by either. So the contract, measured by every test, falls short in each instance of fulfilling the requirements of a partnership agreement.

Having decided that the contract did not constitute a partnership agreement, it follows that plaintiff would not be liable for the losses in the prosecution of the business, nor for the amount advanced to him by the company to be refunded out of the profits in the absence of

a contractual agreement to that effect. Plaintiff, not being a partner, could also maintain the action against the company.

The contract did not authorize plaintiff Herring to mine and crush asphalt at the expense of the defendant company and then sell it to other parties, neither are there any terms therein which especially forbid his mining and selling to other parties, but under the contract Herring had no right to sell asphalt to other parties which had been mined at the expense of the company, and, having seen fit to sell asphalt to others at a price much less than the cost of production without the consent of defendant company, it is just that Herring bear the expense of mining the asphalt sold to others.

While the evidence on some of the facts is not as definite as it should be, yet the court is of the opinion that it is best for all parties to take the facts, as near as they can be arrived at, and render a final opinion here, and not send the case back for a new hearing, which would occasion more expense to the parties than the amount involved.

The trial court found that defendant company furnished to plaintiff in cash, $1,005.85; that defendant was entitled to a credit of $34.67, for coal sold to the city of Ada, making a total credit to defendant of $1,040.52.

The trial court found that the plaintiff paid out $1,330 for labor in mining, hauling, and crushing the asphalt gotten out by him during the three months he was in the employ of the company, and also paid $127.33 for other expenses, such as supplies, freight, etc. During this time plaintiff mined 514 tons of asphalt, sold 279 tons to other parties, and delivered 235 tons thereof to

defendant company. The labor pay roll, while mining the said 514 tons, was $1,330, which made the cost of production per ton, $2.58½. The cost of producing the 279 tons sold to other parties was $721.21, which amount should be deducted from the total of $1,330.

Plaintiff is entitled to the following credits:

| | |
|---|---:|
| Services for three months at $100.00 per month..$ | 300.00 |
| Expenses paid out for supplies, etc. | 127.33 |
| Paid out on pay roll for labor | 1,330.00 |
| For asphalt sold to company | 112.50 |

$1,869.83

Plaintiff is to be charged with the following:

| | |
|---|---:|
| Cash received by plaintiff from defendant | $1,005.85 |
| Coal sold to the city of Ada | 34.67 |
| To expenses for mining asphalt sold to others | 721.21 |

$1,761.73

Deducting the sum of $1,761.73, the sum plaintiff is to be debited with, from the sum of $1,869.83, the sum he is to be credited with, leaves the sum of $108.10, yet due plaintiff.

We are of the opinion that the court properly sustained the attachment. During the trial it was frequently proven, and was also a conceded fact, that the defendant was a foreign corporation and the evidence shows that it was indebted to plaintiff for a debt arising upon a contract.

In attachment proceedings, where the same was not called into question in any way either in the pleadings or at the trial, it was not necessary for plaintiff to make proof of the issue and levy of the attachment.

For the reasons given, the judgment should be modified by a reduction of the amount of the recovery by plaintiff against the defendant company, and he should have a judgment for $108.10, and the judgment, so modified, should be affirmed.

## RULING AS TO COSTS.

The costs on appeal herein, as provided by section 5261, Revised Laws 1910, should be equally divided between the plaintiff in error and defendant in error Herring.

By the Court: It is so ordered.