## MADWINE et al. v. OSAGE SUPPLY CO.

No. 24940. April 14, 1936.

Rehearing Denied June 2, 1936.

S. F. Goldwin and Moss, Breckenridge & Young, for plaintiffs in error.

Chas. L. Yancey, G. C. Spillers, Donald Brown, and E. M. Calkin, for defendant in error.

PER CURIAM. This action was brought by defendant in error against the plaintiffs in error to recover for the alleged conversion of plaintiff's interest in a string of oil well fishing pipe. The plaintiff is a corporation and the defendants a copartnership. This pipe had been bought by the parties jointly at a cost of $608, each party having paid half the purchase price, and it was bought for a resale at a profit and the proceeds of such resale were to be equally divided. The purchase was made in September, 1930; and at that time the pipe was lying in the railroad yards in Ponca City, Okla.

In their pleadings and evidence both parties describe their relations as joint owners.

Sometime in November, 1931, Mr. Zeligson, president of the Osage Supply Company, discovered that the pipe had been moved from its former location in Ponca City. Soon afterwards he called on the defendants at their place of business in Tulsa, Okla., and inquired about the pipe. They both told him that they knew nothing about its removal, and did not know where it then was, but Mr. Madwine did tell him that another man in Wichita, Kan., might know something about what had become of the pipe, but he did not give the man's name. A Mr. Crosbie was present at this interview between Mr. Zeligson and the defendants, and his version of the conversation corrobo-

rated the statements of Mr. Zeligson. Later on, early in December, 1931, the plaintiff sent a registered letter to the defendants stating that they had learned that the pipe was somewhere in Kansas, and asked the defendants for information as to purpose of removal, and if taken under a contract, for terms of the agreement, and demanded a prompt answer. This letter was received by the defendants, but they failed to answer it. In February, 1932, Mr. Zeligson again called on the defendants in Tulsa, and they then admitted that they had rented the pipe to a Mr. Schwartz of Wichita, Kan., and had received a rental of $200 for its use in a fishing job, and that the pipe was somewhere in Kansas. Defendants also claimed that they had given plaintiff credit for $100 on their books, but refused to show the book on account of absence of their bookkeeper. In his testimony at the trial, Mr. Madwine states that in a few days after he had rented the pipe to Mr. Schwartz, he told Mr. Zeligson about it. Mr. Zeligson denies such a conversation. In their testimony at the trial neither of the defendants make explicit denials of the version of Zeligson and Crosbie as to the conversation between Zeligson and the defendants in the latter part of November, 1931.

The jury returned a verdict for the plaintiff for the sum of $500. The court approved the verdict and rendered a judgment against the defendants in favor of the plaintiff for that sum. This appeal challenges the correctness of that verdict and judgment.

Defendants assign ten grounds of error. Their first is that the court erred in permitting introduction of any evidence because the relation between the parties was that of copartnership, as they claimed, and no action could be maintained at law until the partnership affairs were first settled and a balance shown in favor of one party or the other. It is held in Municipal Paving Co. v. Herring, 50 Okla. 470, 150 P. 1067, that:

"A corporation cannot enter into a partnership agreement with an individual."

Certainly the arrangement between the parties in this pipe matter contains none of the usual elements of a copartnership. We will consider the real nature of the relations existing between the parties in said matter when we come to the alleged error of giving instruction No. 2. We hold therefore that the court did not err in proceeding with the trial.

Defendants also complain of the court's overruling their demurrer to the evidence and in refusing to instruct the jury to find a verdict for the defendants. There is plenty of evidence in the record for the plaintiff, if the jury believed it, justifying a verdict against the defendants. No error was committed in those rulings.

Defendants also complain that the verdict is not sustained by sufficient evidence and is contrary to law and in disregard of the court's instructions. The jury evidently preferred to believe the testimony given for the plaintiff rather than that for the defendants, and from our reading of the record we think the evidence is sufficient to sustain the verdict and the latter is not contrary to the law, nor out of harmony with the court's charge. The trial court heard the witnesses testify, saw their demeanor on the stand, and it was within his discretion to approve or disapprove the verdict.

The main objection made by the defendants is to the giving of instruction No. 2 by the court and in refusing to give instruction No. 2 requested by the defendants. We do not think there is any error in this. It was the right and duty of the trial court to construe the contract between the parties, that is to say, to determine whether the relation created between them was a joint ownership, a joint adventure, or a copartnership.

The court first tells the jury that both the pleadings and testimony show that the parties were joint owners of the pipe in question. That much but expresses an admitted fact. Then the court further tells the jury that in such case, if either joint owner takes possession of the property and performs any distinct act of dominion over the other party's interest therein and in denial thereof, or inconsistent with his rights therein, such an act is an act of conversion, and that such party renders himself liable to the other party for the fair and reasonable market value of the interest of the other party in the property.

On the other hand, the jury is told that if they find that the defendants have not committed any act of dominion, etc., over the plaintiff's interest in the property in question, then their verdict should be for the defendants.

This seems to us to be a fair, complete and correct instruction. We believe the court was correct in telling the jury that it was a joint ownership by the parties of the property in question. Perhaps the relationship created between the parties could be more correctly described as a joint adventure.

In Schouler, Personal Property (5th Ed.) sec. 167a, is the following:

"A joint adventure has been aptly defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation."

In 33 C. J. 845, we find:

"Whether the parties to a particular contract have thereby created, as between themselves, the relation of joint adventurers, or some other relation, depends upon their actual intention, which is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts."

Also in 33 C. J. 842, we find:

"A joint adventure is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years."

We think the trial court was right in his construction of the contractual relations between the parties.

In his definition of conversion, and in description of what acts constitute a conversion, the trial court used the exact language stated by this court in Aylesbury Mercantile Co. v. Fitch, 22 Okla. 475, 99 P. 1089. Similar definitions can easily be found in many other authorities. The jury found the facts in favor of the plaintiff, and that means that they believed that the defendants, without the knowledge or consent of the plaintiff, took possession of the jointly owned property, caused it to be shipped out of the state, rented it out in their names only, collected the rents and did not account to the plaintiff for any part thereof, and when called on about the matter denied any knowledge of moving the pipe, or of what had become of it, and finally, after plaintiff, from other sources, obtained a clue as to the mysterious disappearance of the pipe, defendants confessed. Such conduct on the part of the defendants might have created a suspicion in the minds of the jury, as suggested by counsel for the plaintiff, that it was the purpose of the defendants to have it appear to the plaintiff that the pipe had been stolen, and only admitted the facts when they could no longer conceal them. We think the jury had a right to find that such acts amounted to a conversion.

The instruction requested by defendants in effect covers the same ground as that given by the court, but with less clearness. We perceive no error in its refusal.

Defendants' objection to instruction No. 3 is not discussed in their brief, and therefore we assume it is waived.

Finding no reversible error in this record, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. D. Cofield and O. W. Patchell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Cofield and approved by Mr. Patchell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.