## VERNON et al. v. DOBBINS.

No. 30336. March 10, 1942.

*123 P. 2d 264.*

Newton & Pinson, of Coweta, and Gotwals, Killey & Gibson, of Muskogee, for plaintiffs in error.

Watts & Watts, of Wagoner (John M. Gephart, of Wagoner, on the brief), for defendant in error.

CORN, V. C. J. This is an appeal from a judgment for $2,000, rendered in an action brought by plaintiff to recover damages for personal injuries.

Plaintiff sued defendants, individually and as copartners, alleging that on April 8, 1939, they were engaged in vending ice at Coweta, Okla., and in carrying on this business employed plaintiff as driver of their truck. While on a trip to Tulsa, for the purpose of securing repairs for this truck, plaintiff and defendant Jim Vernon, a minor, were forced to stop at Broken Arrow, Okla., to effect certain repairs to the truck. At the direction of the defendant Jim Vernon, plaintiff undertook to remove a rear wheel and repair a faulty brake. While so engaged, defendant depressed the brake pedal, thereby causing hot brake fluid to be ejected from the hydraulic brakes into the plaintiff's eyes, causing the injuries complained of, for

which plaintiff recovered the judgment appealed from.

A guardian ad litem was appointed for Jim Vernon, a minor, and separate answers were filed by defendants, individually and as copartners, in which the copartnership was specifically denied, the question of assumption of risk was raised, and in which it was also alleged that plaintiff accompanied defendant on a Sunday excursion and not as an employee of defendants.

Twenty assignments of error are presented under a general argument. However, for the purposes of this discussion, the questions attempted to be raised shall be considered under two propositions: (1) The existence or nonexistence of a partnership; (2) the sufficiency of the evidence to support the verdict and judgment.

Plaintiff's evidence showed substantially the following facts: After some negotiations by both defendants, the ice route was purchased from one Atterberry, who accepted as part payment a used car belonging to Jim Vernon. The note and mortgage covering the balance of the purchase price for the route and the truck used therefor was signed by both defendants. Defendant Lem Vernon conducted negotiations with the local ice company for the purchase of ice, and the agreement that this route was to be exclusive.

Prior to the accident Jim Vernon told plaintiff he could drive the route, and had plaintiff help him with the repair of the truck before beginning the route. Plaintiff met defendant at defendant's suggestion, and the trip to Tulsa was begun for the declared purpose of securing a wheel for the truck. Defendant Lem Vernon furnished the money for the purchase of the wheel.

Louis Dobbins, plaintiff's brother, testified he worked for defendants from April until about August 15th. His first pay check was signed "Lem Vernon by Jim;" his second was signed by Lem Vernon. This check was not cashed, but was introduced in evidence at the trial. His third check was signed by Lem Vernon.

The testimony of Jewel Clemons, who had worked for defendants, was introduced. He testified he had a conversation with Lem Vernon, who told him what he would want him (Clemons) to do; told him this lawsuit had come up and that defendant wanted him to take out an insurance policy which would protect both of them in case of an accident. A policy was issued and defendant Lem Vernon paid part of the cost, being named as beneficiary therein. The witness further testified that he turned his record books and collections over to Lem Vernon most of the time.

Jimmy Vernon testified it was his own idea to go into the ice business, and that he began negotiations for buying the ice route without his father's knowledge; his father agreed to the proposition and talked over with the manager of the ice company the matter of buying ice for the territory. He further testified that he paid the note and mortgage on the truck by a check drawn on his own account, and when money began to come in from the route it was turned over to his father to pay him for the expense he had been out. This defendant also testified that he depressed the brake pedal at plaintiff's direction, and did not know this would cause the fluid to be forced out of the line.

Lem Vernon testified that he had discussed the matter of this injury with plaintiff's attorneys before the action was filed, and when asked if this was a partnership, replied, "Oh, I guess you might call it that," but testified, "It was not a partnership." He also testified he had no agreement with Jim Vernon to share in the profits. He further testified that Jim carried an account in the bank, and that a part of the proceeds was deposited to Lem Vernon, the defendant, to reimburse him for expenses, and as a matter of convenience. Also, that he, Lem Vernon, had helped to finance this business venture for Jimmy in order to enable the boy to have money with which to attend college.

Defendant Lem Vernon further testified that after August 21, 1939, and during the 1940 season, his own truck was used on the ice route, the truck with which the injury occurred having been sold; that his truck was assigned to Jimmy about May, 1940. When the route money was brought in he would deposit it in his personal account and that he did this the remainder of the season. Until the suit was filed August 15, 1939, he signed all checks. After Jimmy sold the truck August 21, 1939, he, Jimmy, had an account and some of the proceeds were put to Jimmy's credit and part to his own credit.

The plaintiff introduced other evidence dealing with the possibility of the injury occurring in the manner alleged, and also medical testimony regarding the nature and extent of his injury.

It is the defendants' contention that the evidence, summarized above, is insufficient to show the existence of a partnership, and, the defendants assert, the undisputed evidence negatives the idea of there having been any intention to form a partnership. Conflicting testimony was introduced on the question of the existence of a partnership. Hence the duty devolves upon this court to declare whether, under the facts revealed by the record, there was competent evidence to support the jury's findings on this question.

The rule has been announced by this court, in an unbroken line of decisions, that when the existence of a partnership is a matter to be determined by inferences from all the evidence, it is a question of fact for the jury, and where such an issue is submitted to the jury and the evidence reasonably sustains the jury's findings, such findings will not be disturbed on appeal.

Defendant cites and relies upon the case of Hughes v. Baker, 169 Okla. 320, 35 P. 2d 926, and asserts that the principles therein announced are controlling herein. With this we cannot agree, inasmuch as the cited case is clearly distinguishable from the case considered here. In the Hughes Case, supra, it was pointed out, after citing and quoting from Municipal Paving Co. v. Herring, 50 Okla. 470, 150 P. 1067, that Mrs. Hughes had no right, as the owner, to dispose of or to exercise any control over the enterprise. Her only interest was in the excess value of certain land of which she was the owner, after the parties had completed certain improvements thereon.

However, in the present case a vastly different situation prevailed. Lem Vernon exercised actual control over the business affairs, as did Jim Vernon. He made the contract for the purchase of the ice, acquired insurance on an employee with himself as beneficiary, handled the money collected and paid the bills when they were due. Nor can it be disputed but that, had this venture suffered an unsuccessful financial termination, Lem Vernon would have been liable for the loss by virtue of the fact that his liability was fixed upon his execution of the note and mortgage, and upon the contract which he signed with the People's Ice Company for the purchase of the ice sold.

The questions of existence of a partnership, and the question whether Jim Vernon and Lem Vernon were carrying on a partnership business at the time of the injury complained of, were properly submitted to the jury. The jury, having heard the conflicting testimony and having resolved the issues in favor of the plaintiff in holding that a partnership did in fact exist, thereby fixed the liability of the partnership, and of the partners in their individual capacity, to respond to plaintiff for his injuries. After careful consideration of the entire record, we are of the opinion there is sufficient competent evidence to sustain the findings of the jury.

Judgment affirmed.

WELCH, C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. OSBORN and DAVISON, JJ., absent.