## OCTOBER TERM, 1886.

Tabor, Impleaded, etc., v. Armstrong, and Armstrong
v. Tabor.

1. The expression " due or to become due under the contract," used in
section 1657 of the General Laws (1877), entitles the subcontractor
to be paid out of moneys that may become due the contractor for
labor or materials furnished by other persons subsequent to the
subcontractor's lien notice, but under the same principal contract.
2. The subcontractor is not entitled to a lien for expense incurred
through idleness enforced by the default or negligence of the prin-
cipal contractor.

*Appeal from, and writ of error to, District Court of
Arapahoe County.*

Armstrong, as subcontractor, brought a mechanic's lien
suit against Cook as original contractor, and also against
Tabor as owner of the property upon which the labor was
performed and materials furnished. Armstrong claimed
certain damages for enforced idleness and extra expense
in consequence; also for work on the building caused ·
by the delay, default and negligence of Cook, as well as
compensation for the labor performed in the immediate
work of placing the stone in position. Cook made de-
fault, and a personal judgment was entered against him;
it being expressly stipulated that such judgment should
not in any manner prejudice or affect the rights of either
Tabor or Armstrong in the action. Upon trial a decree
was entered against Tabor, allowing the lien for the sum
of $922.68; but the damages claimed on account of the
so-called extra work and expenses above mentioned were
disallowed. From the decree and judgment Tabor took
his appeal to the supreme court. To review the same,
because of the rejection of his claims for the consequen-
tial damages aforesaid, Armstrong sued out a writ of
error.

By stipulation both causes in the supreme court were submitted together, and were to be taken as though Armstrong had filed cross-errors in the Tabor appeal. The objections raised in both are therefore considered and determined by one opinion. The complaint, among other things, alleges "that the sum [an amount sufficient to cover plaintiff's entire demand] became due from defendant Tabor to defendant Cook for work and materials furnished and performed on said building on and after April 15, A. D. 1880;" said April 15th being the date of Armstrong's notice to Tabor of his intention to claim a subcontractor's lien, Armstrong himself doing no work after that date.

Section 1657 of the General Laws, being section 6 of the mechanic's lien law, in force at the time the transactions out of which the original action arose took place, reads as follows: "Every subcontractor, journeyman, laborer or other person performing work or labor, or furnishing materials, shall, under the provisions of this act, have a valid lien upon the building or superstructure or other property upon which a lien may be claimed, as hereinbefore provided, and upon which such work or labor was performed or for which such materials were furnished; and if any money be due or is to become due under the contract, from the owner or owners to such contractor, upon being served with a copy of the statement as provided in section two (2) of this act, by a subcontractor, journeyman, or laborer, as aforesaid, [the] owner or owners may withhold out of any moneys due or to become due under the contract a sufficient amount to satisfy the lien claimed by such subcontractor, journeyman or laborer, or other person performing work or labor or furnishing materials, until the validity thereof be established by proper legal proceedings, if the same be contested; and if so established, the amount thereof shall be a valid set-off to that extent in favor of such owner or owners, and against the contractor. And, after such copy of the statement shall

have been properly served upon such owner or owners in case of a failure to comply with the provisions of this section, then each subcontractor, journeyman, or laborer, or party furnishing materials, may sue and recover from such owner or owners the amount of any damages he may have sustained by reason of such failure.   *   *   *  "

Messrs. SULLIVAN and MAY and J. M. ELLIS, for plaintiff in error and appellee.

Mr. L. C. ROCKWELL, for appellant and defendant in error.

HELM, J.  Two questions are presented by the records and arguments in these cases: *First,* is the expression "due or to become due under the contract," used in section 1657 of the General Laws, confined to moneys due or to become due for labor or materials furnished previous to the service of the statutory notice by the subcontractor upon the owner, or does the subcontractor's lien notice entitle *him* to be paid out of moneys that may become due the contractor for labor performed or materials furnished by other employees or materialmen subsequent to the date of such notice, but under the same principal contract?  And, *second,* is the subcontractor entitled to his lien upon the premises and action against the owner for damages and expense incurred through idleness enforced, or on account of work made necessary by the default or negligence of the principal contractor?  These questions will be answered in the order of statement.

The statute treats the original contract as an entirety. It gives the subcontractor or laborer a lien if money is due and unpaid to the contractor at the time of serving his notice upon the owner, or if thereafter money becomes due under the contract.  Having received the requisite notice, if the owner ·fails to withhold money thereafter becoming due under the principal contract,

his statutory liability to the subcontractor or laborer attaches.   Upon this liability there is no language in the law that expressly imposes a limitation.   The statute itself does not say that the money spoken of as "to become due" must be payments that have not yet matured for the work previously performed or materials previously furnished by the party claiming a lien.   We cannot conclude that it was the intention of the legislature to thus limit the language used.   That body would hardly have left so important a qualification wholly unexpressed. For us to recognize such a limitation would be to interpolate into the statute something we cannot, by any fair intendment, find therein.

It is urged that this view of the law might produce gross injustice; that it allows one man the benefit of another's labor or property.   The evident answer to this objection is that the entire completed building is necessary to the adequate protection, under the law, of all connected with its erection.   The various subcontractors, material-men and laborers all act under the same general contract, though not privies thereto,— the only contract to which the owner is a party.   They each and all contribute to the structure, which is the common product of their materials and labor.   The lumber furnished by one person cannot be segregated from that furnished by another; nor can the interest of a material-man be protected without the work of the laborer; while, of course, the combined labor of all the workmen furnishes the foundation for each individual workman's security.   Thus the subcontractors, laborers and material-men who contribute to build one part of the structure would be receiving the benefit of each other's contributions, even if, according to counsel's contention, the materials and labor furnished by those completing another part could be and were excluded from the statutory lien and right of action. The truth is that each subcontractor, laborer and material-man who invokes the statute must of necessity

reap a benefit from the aid given the enterprise by other subcontractors, material-men and laborers. A moment's careful reflection will show how futile would be a legislative attempt to confine each man's lien to the result of his own labor, or to his own materials, or to the particular part of the structure to the erection of which his labor or materials contributed, and at the same time accomplish the beneficent purposes for which the law is framed.

We now turn to the second question above stated. As already suggested, there was no privity of contract between Armstrong and Tabor. Whatever right Armstrong may have against Tabor or his property must be derived solely from the statute; but the statute contains a provision expressly limiting the liability of the owner and his property to those cases where the lien is claimed for labor actually performed upon the "building and superstructure," and materials actually furnished therefor. The language used is so plain that it needs no judicial construction. But provisions in other states, similar in this respect, have been passed upon; and, so far as we are aware, it has been universally held that the demand "must be due as a consequence of actual performance." *Minor v. Hoyt*, 4 Hill, 193; *Houghton v. Blake*, 5 Cal. 240; *Taggard v. Buckmore*, 42 Me. 77. See, also, *Barnard v. McKenzie*, 4 Colo. 251. In view of this conclusion we cannot indorse the proposition advanced, that the amount for which the subcontractor is entitled to his statutory lien and action is always to be measured by the extent of his valid claim against the principal contractor. Where, by the default or neglect of the principal contractor, the subcontractor is obliged to remain idle, and suffers loss in consequence, he may undoubtedly recover of the contractor; but such damages could constitute no valid claim, under the statute, against the owner. Therefore, Tabor had a right to inquire into the validity of Armstrong's demand, and the evidence concerning the latter's alleged claims of $500 and $75, re-

spectively, was properly excluded. The $50 item is abandoned by counsel in argument, and hence we do not consider it.

There remains but a single question, viz., did the court err in rejecting evidence of the $260 demand? This amount was claimed by Armstrong for labor which he was obliged to perform in consequence of Cook's failure to distribute the cut stone in the most convenient order and places about the building. The labor of removing cut stone furnished for the second story in order to reach that required for the first, and the work of transferring such stone from the Larimer street front to the front on Sixteenth street, where it belonged, became necessary in the erection of the structure. It cannot properly be termed extra work, wholly outside of the principal contract. It had to be done before Armstrong could go on with his work of setting the stone into the respective walls. Had Cook himself employed some day-laborers to do this work, they would, in our judgment, have been as much entitled to a lien as is the man who does any other work preliminary or incidental but essential to and directly connected with the actual laying of the foundation walls, or erection of the superstructure. And we can discover no good reason for applying a different rule to Armstrong merely because he happens to be a subcontractor instead of laborer. If, therefore, Armstrong could have succeeded, through the introduction of proper evidence, in establishing a valid claim against Cook for the so-called extra work now under consideration, we are of the opinion that he was entitled to have it included in his recovery against Tabor. For error in the view taken upon this subject, and consequent rulings by the district court, its judgment must be reversed.

None of the foregoing conclusions conflict with anything decided in *Jensen v. Brown*, 2 Colo. 694, or *McIntyre v. Barnes*, 4 Colo, 205, cited by counsel.

*Reversed.*