FREDERICK K. McKEEN *vs.* CHARLES P. HASELTINE and others.

July 1, 1891.

Acceptance of New for Old Mortgage in Ignorance of Intervening Liens—Reinstatement of Original Mortgage Refused.—A creditor, a part of whose debt was secured by mortgages, released such securities, and accepted instead another and later mortgage, covering also debts not before secured; he supposing, as the mortgagor represented the fact to be, that there were no other liens on the property. In fact there were intervening mechanics' liens. *Held*, that a finding of these facts alone would not entitle the mortgage creditor to a judgment reinstating his prior mortgages, it not appearing that he had released them in reliance upon the misrepresentation.

Mechanic's Lien—Charge for Transportation.—A charge for the transportation of machinery to be repaired, *held* properly a part of the account for repairing, and secured by the statutory mechanic's lien.

**Same—Acceptance of Notes—Effect on Lien.**—The taking of the debtor's notes maturing within the time allowed for perfecting and enforcing a mechanic's lien is not, in general, to be deemed a payment, or as affecting the statutory right of lien.

**Same—Taking of Other Security, when not a Waiver.**—The taking of other security is not necessarily inconsistent with an intention that the statutory lien shall also remain available, and the latter is not to be deemed to have been thereby waived, if it appear that this was not the intention.

**Same—Evidence—Lien not Waived.**—Evidence *held* sufficient to justify a finding that, in taking mortgage security, it was not intended to relinquish the right of mechanic's lien.

Appeal by defendants Haseltine & Farnham and the Minnesota Title Insurance & Trust Co. from a judgment of the district court for Hennepin county, establishing mechanics' liens to the amount of $287.78 in favor of plaintiff, and $5,462.06 in favor of the defendant the Willford & Northway Mfg. Co., against certain real estate of defendant James B. Holmes situate in Polk county, and adjudging such liens to be superior to those of the appellants. The action was brought in Polk county, and by consent of parties removed to Hennepin county, and there tried by *Smith, J.*

*Daniel Fish,* for appellants.

*E. D. Jackson* and *Geo. H. White,* for respondents.

DICKINSON, J. The plaintiff prosecutes this action to foreclose a mechanic's lien upon real estate of the defendant Holmes, and to have it adjudged that the rights of the other defendants in the property are subordinate to the plaintiff's lien. Upon the facts found by the court, it was adjudged that the property was subject to mechanics' liens in favor of the plaintiff and of the defendant the Willford & Northway Manufacturing Company; that such liens were co-ordinate; that both were superior to the claims of the other defendants; and that the property be sold to satisfy such liens. The defendants Haseltine & Farnham and the Minnesota Title Insurance & Trust Company appealed from the judgment. The contest is between the parties having mechanics' liens,—that is, the plaintiff and the defendant the Willford & Northway Manufacturing Company, on the one side, and

the defendants Haseltine & Farnham on the other; the rights of the latter being based on certain mortgages executed by Holmes, the landowner, as security for his indebtedness, as will be hereafter more fully stated.    There is some controversy as to the time when the property became first subject to the mechanics' liens, so as to give such liens priority over subsequently executed mortgages; but for the present we will assume that the findings of the court as to that are correct, and consider the rights of the appellants in that view of the case.

The property of Holmes on which the liens were charged consisted of a platted tract, known as "Block 102," in a certain addition to the town of Red Lake Falls.    The plaintiff's right of lien was for work done by him for Holmes, as a millwright, in the erection of a mill on this land.    This labor is found to have been commenced *April 11, 1889,* and terminated January 17, 1890, and the lien-statement was soon thereafter filed for record.    The lien of the Willford & Northway Manufacturing Company was for labor performed and materials and machinery furnished for the erection of the mill, commencing *March 26, 1889,* and terminating October 21st of the same year.    The lien-statement was filed for record in December following.    In August, 1889, Holmes executed to that company his two promissory notes for the amount then due and payable to the company, the notes being payable in 60 and 90 days, respectively.    These notes were not given in payment of the debt, as the court found, and they were not intended to affect the right to a lien.    On the 5th day of October, 1889, those notes being unpaid, Holmes executed to the company, in lieu thereof, a new note for the amount of the same, payable four months after that date, and secured it by a mortgage on real estate other than that on which the mill was situated.    This note and mortgage, as the court found, were not taken in payment of the debt, but as further security. They remained in the hands of the company, and at the trial were offered to be surrendered.

*January 26, 1889,* and prior, as it will be seen, to the commencement of the contributions of labor or material for which liens were acquired, Holmes, being indebted to Haseltine & Farnham in the sum of $12,000, executed to them his note therefor, secured by a mort-

gage then executed, covering this property, with some other, which was recorded two days subsequently. *April 4, 1889,* Holmes, being indebted to the same parties in the further sum of $2,000, executed to one of them, for the benefit of both, his note therefor, secured by a mortgage on this with other land, which was recorded two days subsequently. It will be seen that this mortgage was anterior to the commencement of the work for which the plaintiff's lien was acquired, but subsequent to the commencement of the charges allowed as liens in favor of the Willford & Northway Manufacturing Company. In September following, Holmes executed to the same parties another mortgage on this with other property, to secure his indebtedness for the further sum of $2,830. Under date of October 1, 1889, Holmes, for the purpose of paying all his indebtedness to Haseltine & Farnham, with some further obligations, all of which then aggregated nearly $25,000, executed his bonds in the aggregate amount of $30,-000, and secured the same by a trust-deed to the Minnesota Title Insurance & Trust Company, as trustee, conveying the land in question, with other lands. This trust-deed was recorded October 5th, and in the latter part of November, as the court found, Holmes and Haseltine & Farnham entered into an agreement to the effect that Haseltine & Farnham should take all of these bonds in payment of Holmes's indebtedness to them, and to negotiate to raise money to pay some indebtedness of Holmes on which they were liable. When this agreement was made, and such bonds received by Haseltine & Farnham, as the court found, they cancelled the former indebtedness, and discharged the prior mortgages; they being at that time informed by Holmes that there were no incumbrances or liens on the premises, and they then having no knowledge to the contrary. The indebtedness to Haseltine & Farnham has never been paid, except in the manner stated.

At the trial the offer was made on the part of Haseltine & Farnham to surrender an amount of the bonds held by them equal to the amount of the mortgage indebtedness of Holmes to them existing prior to the attaching of the mechanics' liens, they claiming that to that extent their former mortgage securities should be reinstated.

The facts established by the findings of the court are insufficient to

entitle Haseltine & Farnham to the affirmative relief which they seek, for the reason that it does not appear that the misrepresentation by Holmes in any degree influenced their conduct, or that they would not have released their prior mortgages, and have accepted the substituted security, if they had known the fact of the intervening mechanics' liens. There was no direct evidence as to that, and only by inference, if at all, could it be concluded that the misrepresentation and want of knowledge as to the fact *induced* the appellants to accept the substituted security and to release their earlier mortgages. In this connection it is to be observed that, according to the findings of the court, the substituted securities were not only for a larger amount than those which were released, but they were of larger scope, covering liabilities not secured by the former mortgages. Such being the case, an inference is not necessarily to be drawn, from the bare facts of the misrepresentation and want of knowledge, that, if the truth had been known, the substituted securities would not have been accepted in place of those before held. It is hardly necessary to say that the misrepresentation and ignorance of fact would not entitle the appellants to the relief sought, unless they were thereby influenced in the conduct which they now seek to avoid. 1 Story, Eq. Jur. § 141.

The foregoing conclusion makes it a matter of but little importance whether the item of $1.50, charged in the account of the manufacturing company under the date of March 26th, be allowed or not. This was for the expense of getting certain machinery of Holmes to the shops of the lien-claimant for repair. We deem this to have been a proper subject for a lien, being really a part of the general undertaking of repairing or reconstructing the machinery for this mill. *Hill* v. *Newman*, 38 Pa. St. 151. The item sufficiently appeared in the lien-statement of the account, although it was only embraced in that part of the statement designated as a "summary" of the account. It was there plainly stated.

It is said by the appellants that the court erred in finding that the notes and the mortgage security given by Holmes to the manufacturing company were not taken in payment, but as further security, and it is claimed that the legal effect of taking the mortgage security

was that the statutory right of lien was thereby waived. The tak-ing of the debtor's notes, maturing within the time allowed for per-fecting and enforcing a lien, is not to be regarded as intended to have been a payment, and the right of lien was not affected thereby. *Mil-wain* v. *Sanford*, 3 Minn. 92, (147.) Though it be true, as the ap-pellants claim, that, in general, the taking of a distinct security should be deemed a waiver of the right of lien given by the statute, that is not the necessary result. The intention of the parties must control the effect of such a transaction. The taking of distinct security is not necessarily inconsistent with an intention that the statutory lien shall also remain available. Both kinds of security may co-exist, and that given by the statute is not to be deemed to have been relin-quished or waived if it appears that the other security was not given or accepted with that end in view. In this case there was some evi-dence, although it was meagre, bearing upon this question. Will-ford, one of the members of the company, testified that it was his understanding that it was taken for additional security, for the pur-pose of getting all the security he could, upon being informed that the mill property was incumbered by prior mortgages to the extent of some $22,000. Holmes testified that he offered the mortgage se-curity to get further time on the notes previously given. This evi-dence tended to show that the mortgage was given and accepted for other purposes, in the minds of the parties, than to relinquish the right to a mechanic's lien, or to provide a substituted security in place of that. We therefore consider that the finding of the court was justified.

The question of the constitutionality of the lien law has been de-cided in the case of *Bardwell* v. *Mann, supra,* p. 285, at the present term.

Judgment affirmed.