**ARKANSAS FUEL OIL CO. et al. v. Mc-DOWELL et al.**

No. 16170—Opinion Filed July 20, 1926.

**1. Oil and Gas — Materialman's Lien on Leasehold—Liability of Casing Used in Well.**

Where A. purchases a three-fourths interest in an oil and gas leasehold and the well being drilled thereon, for a sum certain, a portion of which sum is paid at the time of the execution of the agreement of sale and purchase, the balance to be paid when the hole or well being drilled shall have reached a certain depth, and the written agreement provides that in the event the well proves to be a producing well. A. Shall have full, complete and exclusive control of the well and the sale of the product, and A. and its agents exercise control over the drilling of the well, and in the agreement of sale it is provided that A. will "loan" to T. sufficient casing to case the well to the agreed depth, and A. does furnish and deliver such casing, such casing is an appliance used in drilling for oil or gas, and is subject to the lien of laborers and materialmen furnishing labor and material to the owners of the leasehold, for the purposes of drilling for oil or gas

**2. Chattel Mortgages—Satisfaction by Contract Work.**

Where, under such agreement as described in the first syllabus, A., before the balance of the purchase price becomes due, advances T. an additional sum of money, being a portion of the purchase price, and T. executes a chattel mortgage to A. covering all equipment, appliances, tools, etc., then on the leased premises, and afterwards the well is drilled to the depth specified in the original agreement between A. and T., the mortgage is fully "satisfied" by the act of drilling to the agreed depth, and such mortgage constitutes no lien upon the property set forth in the mortgage.

**3. Oil and Gas—Laborer's Lien on Leasehold—Hauling Equipment to Leasehold.**

He who as a laborer, under an agreement with a contractor or owner of a leasehold, hauls with his team, equipment or appliances from point off the leasehold onto the leasehold, such equipment or appliances being used in operating for oil and gas purposes, such laborer or teamster is entitled to a lien for the amount agreed to be paid him for such work, under the applicable provisions of section 7464 and 7466, Comp. St. 1921. Cleveland et al. v. Hightower et al., 108 Okla. 84, 234 Pac. 614.

**4. Same—Superiority of Lien Over Chattel Mortgage.**

Where C. furnished equipment, tools, appliances, etc., to the owners of a leasehold for oil and gas purposes, and such appli-

ances, etc., are furnished by C. on open account, and after the appliances have been used for a period of time in operating for oil and gas, one of the owners of the leasehold executes a mortgage to C. for the purchase price of such appliances, such mortgage does not operate to defeat the lien by laborers and materialmen, and such mortgage lien is junior and inferior to the liens of laborers and materialmen under sections 7464 and 7466, Comp. St. 1921.

**5. Same—Lien Statute not Applicable to Claim for Rent of Tools.**

One who rents "fishing tools" to the owner of an oil or gas lease, at a stipulated price per day, for the use of such tools on a "fishing job," is not entitled to a lien for the rental value thereof, under sections 7464-7466, Comp. St. 1921.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Hughes County; George C. Crump, Judge.

Joe McDowell brought his action against the Arkansas Fuel Oil Company and the Arkansas Natural Gas Company and others, to foreclose a mechanic's lien against the oil and gas leasehold, tools, rigs, drilling equipment, casing, machinery, boilers, engines, and other appliances used in drilling an oil well. Some 15 other mechanics, who filed labor liens, interplead, as did the Weleetka Lumber Company, the Oklahoma Iron Works, the Tonkawa Bit & Machine Shop, Acme Fishing & Tool Company, and the Continental Supply Company. From a judgment for plaintiffs, the Arkansas Fuel Oil Company and Arkansas Natural Gas Company appealed and the Continental Supply Company filed its cross-appeal. Affirmed in part.

Frank H. McGregor and West, Gibson, Davidson, Sherman & Hill, for the Arkansas Companies.

W. C. Hall, for Continental Supply Company.

A. M. Woodford, for Oklahoma Iron Works.

John J. Maynard, Warren, Miller & Crutcher, and Anglin & Stevenson, for all others except the Weleetka Lumber Company.

Turner & Lucas, for the Weleetka Lumber Company.

Opinion by RUTH, C. I. I. Given was the owner of an oil and gas lease on the south one-half of the southeast one-fourth of section 5, twp. 7, R. 8, in Hughes county, Okla., and on April 18, 1923, assign-

ed 21-25ths interest in same to W. J. Thurber. On July 23, 1923, Thurber purchased lumber from the Weleetka Lumber Company, with which lumber Thurber erected a derrick on the lease, and on Sept. 24, 1923, the last named company filed its materialman's lien against the leasehold, equipment, etc. The Oklahoma Iron Works furnished certain supplies and filed its lien on September 23, 1923. McDowell filed his lien January 5, 1924, and the other liens were filed between the 5th and 25th of April, 1924.

The claim of the Tonkawa Bit & Machine Shop was for dressing tools for defendants, its shop not being located on the lease. Interveners, Sweeney, Sanders, Walker, Sutton, and Bunch, were teamsters, and claimed liens for hauling supplies to the lease for the well being drilled. The Continental Supply Company's claim arose under a chattel mortgage given by Thurber on certain tools and equipment used in drilling the well, the mortgage being filed for record in Hughes county, March 5, 1924. The Acme Fishing & Tool Company's lien was for rents of fishing tools, and the balance of the lien claims were for labor in drilling. etc.

This suit was filed on April 8, 1924, and the Arkansas Companies attempted to move the casing and other equipment from the lease, and a restraining order directed against them was issued April 15, 1924. Upon trial of the cause, judgment was rendered for plaintiffs and interveners for the several amounts claimed, and foreclosing their liens on—

"all tools, rigs, machinery, boilers, engines, casing, and other appliances and appurtenances used in the drilling of a well on the above described land, together with the leasehold estate on said premises."

In this judgment the Continental Supply Company's mortgage lien was declared inferior to the other lien claims, and it filed its cross-appeal.

The Arkansas Companies present their appeal under four propositions as follows:

"None of the parties to this suit were entitled to any lien upon the casing owned by Arkansas Natural Gas Company, and Arkansas Fuel Oil Company, which has been loaned to W. J. Thurber and used by him in drilling a dry hole on the lease premises.

"(a) The arrangement between Thurber and the Arkansas Natural Gas Company, by which the casing in question was loaned under a specific written agreement, constituted a mere bailment, and gave Thurber no right or title to the casing which could be subject to any claim of plaintiff interveners or cross-petitioners. U. S. Supply Co. v. Andrews, 71 Okla. 293, 176 Pac. 967.

"(b) The casing was the sole property of the plaintiffs in error, Arkansas Fuel Oil Company and Arkansas Natural Gas Company, and was a mere movable personal chattel, and was not within either the letter or the spirit of the lien statute and in no manner subject to any claim of Thurber's creditors. Jones on Liens, sections 1385, 1386; Moore v. Carey Brothers (Tex. Civ. App.) 246 S. W. 1083; Duty v. Texas-Cushing Oil & Development Co. (Tex. Civ. App.) 242 S. W. 495; Williams v. Maqouirk (Tex. Civ. App.) 235 S. W. 640; Shrader v. Gardner, 70 W. Val 780, 74 S. E. 990; Whittelsey v. Porter, 82 Conn. 95, 72 Atl. 593; Bloom v. West (Colo.) 32 Pac. 846.

"(c) There was no partnership between the Arkansas Natural or Arkansas Fuel Oil Company, or either of them, with W. J. Thurber, the man who employed the workmen who are asserting the liens and who contracted the debts for which their claims are assessed. Municipal Paving Co. v. Herring, 50 Okla. 470, 150 Pac. 1067; Wommack v. Jones, 103 Okla. 1, 229 Pac. 159; Anderson v. Keystone Supply Co., 93 Okla. 224, 220 Pac. 605; Campbell v. Smith, 106 Okla. 26, 232 Pac. 844; Bell v. Johnston (Pa.) 126 Atl. 187.

"(d) The contract by which the Arkansas Natural Gas Company loaned the casing to Thurber specifically provided against any liens thereon, and the claimants cannot seek to get the benefit of said contract without being bound by all of its provisions. Baldwin Locomotive Works v. Edward Hines Lumber Co. (Ind.) 125 N. E. 400; Malbon v. Birney, 11 Wis. 112.

"None of the parties to this action were entitled to any lien on the tools of W. J. Thurber, which were mere personal chattels, which never became a part of the fixtures or appurtenances of the lease, and which were covered by a mortgage to plaintiff in error, Arkansas Fuel Oil Company. Hays Drilling Co. v. Sartain, 108 Okla. 181, 235 Pac. 615; Duty v. Texas-Cushing Oil & Development Co. (Tex. Civ. App.) 242 S. W. 495; McClelland v. Haley (Tex. Civ. App.) 237 S. W. 627; Williams v. Maqouirk (Tex. Civ. App.) 235 S. W. 640.

"The lien of the mortgage of Arkansas Fuel Oil Company upon the tools of Thurber was paramount in any event to any claim for work or labor performed after the execution and filing of said mortgage. Landers v. Okmulgee Bank of Commerce, 106 Okla. 59, 223 Pac. 200.

"No lien could in any event arise or attach in this case in favor of any of the claimants whose work consisted merely of transportation, that is, hauling, or who merely rented tools to Thurber, or who repaired machinery off the premises, or who furnished gasoline for the operation of his cars which

he was using generally in his business. Hays Drilling Co. v. Sartain, 108 Okla. 84, 234 Pac. 614; Cleveland v. Hightower, supra; Wisconsin Brick Co. v. National Surety Co. (Wis.) 160 N. W. 1044; Union Traction Co. v. Kansas Casualty & Sur. Co., 112 Kan. 774, 213 Pac. 169; Gray v. Magdalena (Tex. C.v. App.) 240 S. W. 693; Williams v. Maqouirk (Tex. Civ. App.) 235 S. W. 640; Wilson v. Whitcomb, 100 Pa. St. 547; Bell Oil & Ref. Co. v. Price (Tex. Civ. App.) 251 S. W. 559."

The Continental Supply Company presents its appeal upon three propositions as follows:

First. "None of the parties to this action were entitled to any lien on the tools of W. J. Thurber, used by him in the process of drilling said well or dry hole on the lease premises, because said tools were mere personal chattels which never became a part of the fixtures or appurtenances of the lease, and which were covered by a chattel mortgage to the Continental Supply Company."

Second. "No lien in any event could arise or attach, in this case in favor of any of the lien claimants whose work and materials furnished consisted of renting or hiring machinery, or repairing machinery off the premises."

Third. "The mortgage lien of the Continental Supply Company upon the tools of Thurber was paramount in any event to any claims for work or labor performed after the execution and filing of said chattel mortgage."

On November 20, 1923, W. J. Thurber, as first party. and the Arkansas Natural Gas Company, as second party, entered into a written agreement. the material parts of which recited as follows:

"Witnesseth that, for and in consideration of the sum of $100. etc., in hand paid, etc., first party agrees to sell, assign, and deliver to the second party an undivided three-fourths interest in and to a valid and subsisting oil and gas lease covering the south half of the southeast quarter of section 5, township 7 north, range 8 east, containing 80 acres. more or less, in Hughes county, Okla.. together with an undivided three-fourths interest in and to the well which first party is now drilling upon said land as hereinafter provided, and immediately upon the execution of this agreement first party shall execute and deliver to second party a proper assignment transferring to second party a good title to the three-fourths interest in and to the lease and leasehold estate."

The third paragraph recites that a well is now being drilled on the lease, and the first party is to drill to a depth of 3,500 feet or through the "Smith" sand without cost or expense to second party, and first party shall pay all materialmen and mechanics so that no lien shall be enforced against the property, and will save the second party from all such liability and loss.

In the fourth paragraph the second party agrees to pay first party $2,500 immediately upon the execution of this agreement and an additional sum of $4,500 "when the well shall be completed as herein provided," and then continues as follows:

"And second party further agrees to loan first party the following casing to be used in drilling said test well to wit: (then follows the list) * * * and all additional casing which shall be necessary for the completion of said well. * * * Said casing shall be merely for the use of first party in drilling of said well, and that first party shall have no right. title, or interest therein except as hereinabove provided."

The agreement then provides that if the well is a paying well, the first party shall pay the second party one-fourth of the value of the casing, and if the well is a dry hole the casing shall remain the property of the second party. If the test makes a well the cost of equipping the same is to be borne by the parties in proportion to their interests, and the second party is to have exclusive management and control of the property, and may make agreements and contracts for the sale of oil according to its own judgment.

Pursuant to the foregoing agreement the Arkansas Natural Gas Company sent their superintendent to the scene of operations, and drilling was continued under his directions. At 1,800 feet oil was struck, and Thurber wanted to shoot the hole at this depth, believing it would make a well, but Smith, the representative of the Arkansas Natural Gas Company, went to Tulsa, consulted the officers of the company, and returned with orders to continue driling to the Smith sand, which was done. After salt water had been let into the well for several months the well was plugged back to the 1,800 foot sand, but it failed to make a well. When oil was struck at 1,800 feet the lease had but a few days to run, and the Arkansas Fuel Oil Company, successor to the Arkansas Natural Gas Company, obtained an extension of the lease for a period of 30 days, from Mable Garner and John D. Garner, after the expiration of the Thurber lease, and 30 days additional in the event a fishing job was necessary, the Arkansas Fuel Oil Company agreeing that if oil was not encountered at the 3,500 foot sand. it would plug back to the 1,800 foot sand, and endeavor to make a well, which they did, with the result hereinbefore stated. While

Thurber was still drilling under his agreement, the Arkansas Fuel Oil Company advanced him further cash for drilling, and caused him to execute a chattel mortgage dated January 12, 1924, covering all the tools, appliances, appurtenances, and accessories of W. J. Thurber, and located on this particular lease, with the exception of the casing alleged to have been loaned to Thurber.

To support the first proposition (subds. "A" and "B"), wherein the Arkansas Companies claim the loan of the casing was a mere bailment, and being a movable chattel was not subjected to any lien of Thurber's creditors, defendants cite numerous cases, but a careful examination discloses they are not in point.

In U. S. Supply Co. v. Andrews, 71 Okla. 293, 176 Pac. 967, the company had no interest in the well, but rented or leased the casing to the Keystone Oil & Gas Company at a stipulated rental of $875. Of this sum $421.50 was to be paid when the K. O. & G. Co. commenced hauling the casing and $453.60 when it commenced hauling the 8¼ inch casing. The agreement further provided that should the K. O. & G. Co. desire to purchase the casing, it had the option of so doing by paying an additional sum of $2,953.43, or of returning the casing if the hole drilled proved to be a dry hole.

The Arkansas Companies on November 20, 1923, purchased an undivided three-fourths interest in the leasehold estate and the well being drilled thereon, for which they were to pay $7,000, of which $2,500 was paid in cash at the time the agreement was signed and the balance was to be paid when the well was drilled to a depth of 3,500 feet. They thereupon acquired a controlling interest in the property, and when they attempted to insert a provision in the agreement that the casing furnished by them was but a loan, they were in fact "loaning" the casing to themselves, for the development of their own property. They had their superintendent, Smith, in charge of the operation, and reserved to themselves full control of the operation of the well if it proved to be a paying well, and agreed to bear three-fourths of the expense of equipping the well for production, requiring Thurber to pay but one-fourth, and one-fourth the market value of the casing. They purchased complete control of the marketing of the oil without restriction, and had the lease extended in their own name after the expiration of the Thurber lease. We are therefore constrained to hold that the mechanic's lien attached to the casing so furnished by

the Arkansas Company for the development of the lease under section 7464, C. O. S. 1921. which provides in part:

"Any person * * * who shall, under contract, express or implied, with the owner of the leasehold, for oil and gas purposes, * * * perform any labor in constructing or putting together any machinery used in drilling, torpedoing. operating. completing or repairing of any oil or gas well, * * * shall have a lien upon the whole of such leasehold, * * * or lease for oil and gas purposes, the buildings and appurtenances, and upon all other oil or gas wells, fixtures, and appliances used in operating for oil or gas purposes upon the leasehold, for which said * * * labor (was) performed."

The Arkansas Company being the three-fourths owner of the lease; being the owner of the casing; the casing being "put together" and used on the lease "in operating for oil," the casing falls squarely within the statute, and is subject to the mechanic's liens.

Defendants contend in their brief that there can be no partnership between an individual and a corporation. While it is true a corporation may not enter into a partnership agreement with an individual, it may enter into a joint venture with an individual, if the nature of the contract is in line with the business its charter authorizes. Municipal Paving Co. v. Herring et al., 50 Okla. 470, 150 Pac. 1067.

The record discloses that the Arkansas Company not only furnished cash to the extent of the purchase price, $7,000, of a three-fourths interest, but continued to furnish money to Thurber for the purpose of continuing the drilling to the 3,500 foot sand, and their every act, as hereinbefore set forth, clearly establishes a joint adventure, and although the agreement of November 20th provided against liens thereon, this was wholly an agreement between the parties to the agreement, and could not affect the claims of mechanics or materialmen who were not parties to the agreement.

Defendants further contend that the tools of Thurber were mere personal chattels, and were covered by the mortgage given by Thurber on January 12, 1924, to secure the payment of $2,500, and this mortgage appears to cover every character of property on the lease except the derrick and casing. This mortgage was given to cover an advance to be used for drilling purposes, and was a portion of the $4,500 balance agreed to be paid when the hole was drilled to a depth of 3,500 feet, and as the hole was actually drilled to this depth, the trial court properly held that the note had been fully paid,

and the mortgage constituted no lien upon the property.

Defendants further insist that teamsters hauling materials to the lease, and mechanics repairing machinery off the leased premises, are not entitled to a lien, but this question is not now open for discussion, having been fully settled in Cleveland et al. v. Hightower, 108 Okla. 84, 234 Pac. 614, wherein it was held:

"He who, as a laborer, under agreement with a subcontractor, hauls with his team casing from a point off a leasehold onto a leasehold, for oil and gas purposes, which casing is to be used as a part of the machinery or equipment for drilling a well on such leasehold, is entitled to a lien for the agreed amount, as a laborer, under the applicable provisions of the statute. Sections 7464 and 7466, C. O. S. 1921."

In the body of the opinion the court uses the following words:

"In other words, the Legislature intended to give a lien, and did by the language employed give a right to the lien, to any laborer whose labor is necessary for constructing or putting together the equipment in either drilling or operating an oil or gas well, whether that labor have its inception off the premises and its culminating effect towards the equipment of the leasehold, on the premises, or whether it is done solely upon the leasehold."

This position is sustained in reason by the text found in 27 Cyc. 44, as well as by the following cases: Wells v. Christian, 165 Ind. 662, 72 N. E. 518; McClain v. Hutton, 131 Cal. 132, 61 Pac. 273, 63 Pac. 182, 622; Tabor v. Armstrong, 9 Colo. 285, 12 Pac. 157; Fowler v. Pompelley, 25 Ky. L. Rep. 615, 76 S. W. 173; McKeen v. Haseltine, 46 Minn. 426, 49 N. W. 195; Hill v. Newman, 38 Pa. 151, 80 Am. Dec. 473; Holeman v. Redemptorist Fathers, 4 Pa. Co. Ct. 233; Tizzard v. Hughes, 3 Phil. 261; Kehoe v. Hansen, 8 S. D. 198, 65 N. W. 1075, 59 Am. St. Rep. 759; 34 Cent. Dig. (Tit. Mechanics' Liens) section 47.

We do not think the rule applies to one who repairs the machinery or dresses tools off the premises, as such machinery or tools might be used on any one of a number of leases, and the lien would be migratory in its nature, and follow the tools or machinery from place to place, and this we do not think falls within the intent of the statute.

The further position taken by the defendant, that as the statute recites "oil or gas well," no lien attaches where a "dry hole" is drilled, is untenable. We are of opinion the Legislature had in mind "wildcatting" and the drilling of "dry holes" when passing this act, giving to mechanics and others a lien upon the equipment, etc., as there would be slight need for this protection where production was struck.

In any event, this well produced oil at the 1,800 foot level, and Thurber wanted to shoot it at that depth, but the defendant company required him to drill to the 3,500 foot sand, and when the well stood for several months and was plugged back to the 1,800 foot sand, it had been ruined by salt water, through no fault of Thurber or these lienors.

This brings us to a consideration of the answer and cross-petition of the Continental Supply Company. On February 27, 1924, W. J. Thurber executed and delivered to this company his promissory note, and on the same date he executed a chattel mortgage to secure the payment of this note, and the mortgage covers apparently, everything on the lease, boilers, engines, bits, ropes, etc., and in fact everything except the derrick. This chattel mortgage was filed for record in Hughes county March 6, 1924. The Continental Supply Company contends this was a purchase money mortgage, and while it alleges in its answer and cross-petition that it sold all the property mentioned in the mortgage executed by Thurber, no evidence was introduced in support of the allegation, but as no answers denying the same were filed, the allegations of the cross-petition must be taken as true. However, the record is silent as to when this material was furnished or delivered to Thurber on the lease, but a strong presumption arises that it was delivered long prior to the execution of the mortgage, as the drilling operations appear to have been started in December, 1923, and the mortgage executed by Thurber to the Arkansas Company covered this identical property and was filed January 12, 1924. Had the mortgage of the Continental Supply Company been executed and filed before or at the time of delivering the property to Thurber, and before the drilling operations were commenced out of which these lien claims arose, a different question would have been presented to this court, but the record raises the presumption that the property was sold on open account, and some months after the sale and delivery, the mortgage was executed and filed, and the liens theretofore filed and the liens of the mechanics for work commenced prior to the filing of the mortgage are superior to the mortgage lien, the drilling of the well being one continuing operation.

There is no analogy between the mechanic's lien law and the statutes governing liens upon gas and oil wells as insisted upon by the cross-petitioner. Section 7461, C. O. S. 1921, "Labor and Materialman's Liens," provides for a lien upon the "land, the buildings and appurtenances" only, while section 7464, "Oil and Gas Well Liens," provides for a lien, not alone upon the leasehold, the buildings, and appurtenances, but goes further, and gives a lien upon the "appliances used in the operating for oil and gas purposes," and the boilers, engines, drills, bits, cables, etc., covered by cross-petitioner's mortgage unquestionably fall under the head of such "appliances," and we find no error in the judgment of the court giving to the liens for labor and materials furnished priority over the mortgage lien of the cross-petitioner.

With reference to the lien of the Acme Fishing Tool Company, we are of opinion the court erred in rendering judgment establishing a lien in its favor. This company neither furnished labor nor material, but this was purely a rental contract of certain tools with which to do a fishing job, and does not fall within the purview of the statute. Hall et al. v. Cowen et al. (Wash.) 98 Pac. 670; Allen v. Elwert, 29 Ore. 443, 44 Pac. 823, 48 Pac. 54; McCormick v. Los Angeles W. Co., 40 Cal. 185.

Defendants contend W. M. Johnson has no lien, as he claims, "for the labor of his crew," but this is not borne out by the record. Johnson's claim is for labor "as manager" of a casing crew," and there is no suggestion in the record that his claim is for other than his personal labor, and there was no error in the judgment of the court in this instance.

For the reasons herein stated the judgment of the trial court decreeing a mechanic's or materialman's lien in favor of the Acme Fishing Tool Company and the Tonkawa Bit & Machine Shop is reversed, with directions to enter judgment in favor of defendants, and against the Acme Fishing Tool Company and the Tonkawa Bit &Mach ine Shop, and in all other matters the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 40 C. J. p. 1170 § 850. (2) 11 C. J. p. 677 § 448. (3) 40 C. J. p. 1165 § 845. (4) 40 C. J. p. 1179 § 876. (5) 40 C. J. p. 1164 § 845.