**SAWYER v. DIXON.**
No. 10625.

Court of Civil Appeals of Texas.
San Antonio.
Sept. 18, 1940.

Rehearing Denied Oct. 23, 1940.

Neel & King, Nat B. King, and Fred Wulff, all of Laredo, for appellant.

Gordon Gibson, of Laredo, for appellee

NORVELL, Justice.

This is an appeal from a judgment of the District Court of Webb County awarding plaintiff, L. J. Dixon, a drilling contractor, a recovery of $1,806.40 against defendant, E. J. Sawyer, the holder of an oil and gas lease in Webb County. Sawyer has appealed, and Dixon has filed cross-

assignments of error. The parties will be designated as in the trial court, or by name.

Trial was to a jury and this case, as analyzed by us, presents the question of the proper judgment to be entered upon the jury verdict evidenced by answers to special issues.

This lawsuit arose from the following facts and circumstances: Sawyer, being the owner of an oil and gas lease to the depth of 3,500 feet covering 60 acres in Webb County, on July 8, 1936, entered into a written contract with Dixon to drill and complete an oil well thereon. This contract consists of thirteen separate paragraphs, but may be briefly summarized as providing that Dixon, as contractor, should drill the lease to a depth of 3,000 feet, unless Sawyer, the owner, should elect to complete or abandon the well at a lesser depth; the hole when completed at 3,000 feet, or a lesser depth, to be 9⅞ inches in diameter; the contractor to furnish at his own risk, cost and expense all material, machinery, appliances, labor and other things necessary to drill and complete the well, except (1) casing, (2) cement and (3) water, which were to be provided by the owner. Sawyer was given the right to require the well to be abandoned or completed at any depth or in any stratum (under 3,000 feet). Upon completion of the well, at 3,000 feet or a lesser depth, the contractor was entitled to the contract price of $4,500. Provision was made for various tests during drilling operations and the owner agreed to pay an additional amount for core tests in excess of ten.

Paragraphs 6, 7 and 8 of the contract read as follows:

"6. It is further agreed that should said owner be not satisfied with the production which is obtained at lesser depth than three thousand (3000) feet, then Contractor agrees to undertake with reasonable care and diligence to clean said hole, and deepen the same to a depth not over three thousand five hundred (3500) feet, and for such deepening, Contractor shall be paid at the rate of Two ($2.00) Dollars per foot.

"7. To determine the proper place to set casing, Contractor agrees, when so requested by owner, as hereinabove provided, to rat-tail said hole to a reasonable depth and to ream out such hole to the size required by the casing designated by Owner. When it is thought that a sand has been reached which will produce, in the opinion of the Owner, oil and gas in commercial quantities, Contractor shall complete the well, when directed to do so by Owner.

"8. It is specifically agreed that any and all material, machinery appliances, and all surplus material furnished by Contractor shall upon the completion or abandonment of said well, be removed by Contractor at his own risk and expense. Contractor agrees to keep an accurate log of all formations drilled and samples of any and all formations encountered, if so requested by Owner."

The well was drilled to a depth of approximately 2,031 feet and 7 inch outside diameter casing set (which, according to testimony in the record, is the recognized size of casing for a 9⅞ inch hole). The well first produced small amounts of oil and then went to salt water.

Sawyer then requested Dixon to proceed to deepen the well, under the provisions of Paragraph 6 of the contract. Dixon did proceed with these operations, drilling through the 7″ O. D. casing. He contends, however, that he did so under a subsequent oral contract. Dixon's cross-assignment on this point is deemed without merit and overruled. Barlow v. Cotulla, 107 Tex. 37, 173 S.W. 874; 10 Tex.Jur. p. 139, sec. 81.

At about 3,060 feet, the drill stem twisted off and lodged in the hole. Dixon worked a day or so trying to get the drill stem out and then abandoned the job, as "it would cost more money to get it out than the thing was worth." Sawyer, with Dixon's permission, took his drilling rig and tried to get the drill stem out of the hole. After three days plaintiff demanded possession of the rig. Sawyer, however, retained possession and at an expense of $2,143.71 removed the drill stem.

The plaintiff sued for a balance alleged to be due him for deepening the well, at $2 per foot, and for defendant's use of the rig after he had demanded possession thereof. By way of offset, defendant pleaded the value of the drill stem recovered from the hole and delivered to plaintiff, and also reconvened for the reasonable expense of getting the drill stem out of the hole in order to look at an oil sand which defendant believed existed just below the cap where the drill stem broke.

The findings of the jury necessary to mention here were:

1. That Dixon had used reasonable care and diligence to clean and deepen the hole

to a depth of 3,000 feet from the point where the casing had been set.

2. That Dixon had used reasonable care and diligence in the selection of the drilling rigs, tools and equipment engaged in the drilling operations.

3. That plaintiff had furnished a drilling rig capable of drilling the well to 3,500 feet.

4. That plaintiff had used reasonable care and diligence in the selection of a 4½ inch drill stem in the deepening operations.

5. That by the exercise of reasonable care and diligence, the well could not have been deepened below where the 7″ O. D. casing was set to a depth of 3,500 feet.

6. That plaintiff has used reasonable care and diligence in attempting to remove the drill stem from the hole after it had twisted off at a point below 3,000 feet.

7. That defendant had used plaintiff's drilling rig for a period of 32 days without plaintiff's license and consent.

8. That the reasonable rental value of said rig for such period was $960.

9. That plaintiff had taken one more core than the ten he agreed to take at his expense; the core being taken at approximately 2,640 feet.

10. That the expenditure of $2,143.71 made by defendant in removing the broken drill stem was the reasonable value of such service.

11. That the value of the pipe and drilling equipment taken from the hole by defendant and delivered to plaintiff was $1,775 (750 feet of 4½ drill pipe, $450; one swedge, $25; 1,000 feet of 3½ inch drill pipe, $1,250; one drill collar, $50).

Based upon these findings and a stipulation that plaintiff had deepened the well 910 feet and been paid for such deepening the sum of $1,000, the trial court entered judgment for the plaintiff in the sum of $1,806.40, made up of the following items: $820 for unpaid amount due for deepening the well, at $2 per foot; $960 for defendant's use of plaintiff's rig; $26.40 for the core taken at 2,640 feet. Recoveries on defendant's set off and cross-action were denied.

■ The contract which is the basis of this litigation provides for two phases of drilling operations. The first phase was completed when casing was set and production attempted at a depth of 2,131 feet. The second phase began when an attempt was made to deepen the well. This operation which involved drilling through the casing was admittedly more hazardous and carried with it a higher rate of contract compensation. The exact wording of the contractor's obligation in Paragraph 6, applicable here, was "to undertake with reasonable care and diligence to clean said hole, and deepen the same to a depth of not over 3500 feet." The obligation relating to drilling to 3,000 feet or a lesser depth is "to drill and complete" a well. The trial court construed Paragraph 6, as binding the driller or contractor to make a good faith attempt to deepen the well, exercising reasonable care and diligence. The question of whether or not this was done raises fact issues which were determined by the jury in favor of the contractor. We agree with the trial court's interpretation of Paragraph 6 of the contract, and defendant's propositions asserting that plaintiff (the contractor) was absolutely bound to drill to a depth of 3,500 feet are overruled.

■■ Dixon, under the findings of the jury, therefore completed his deepening operations insofar as Paragraph 6 of the contract was concerned. Under Paragraph 8, however, he was obligated upon the completion or abandonment of the well to remove, at his own risk and expense, all materials, machinery and appliances furnished by him. The drill, pipe, etc., used to make up the drill stem left in the hole by the contractor are included in the terms "material, machinery and appliances." Arkansas Fuel Oil Co. v. McDowell, 119 Okl. 77, 249 P. 717. Paragraph 8 appears in the contract subsequently to Paragraph 6, and is as applicable to the deepening operations provided for therein as it is to the drilling operations down to 3,000 feet. We, therefore, hold that Dixon, upon completion of his deepening undertaking provided for in Paragraph 6, was obligated to remove the drill stem from the hole. The fact that he used reasonable care and diligence to do this does not excuse his non-performance. The record here shows that the defendant, after the plaintiff refused to proceed further with his attempts to recover the broken drill stem because the cost would be greater than the drill stem was worth, took over the well and did remove the drill stem at a cost of $2,143.71, which was found by the jury to be the reasonable value of such service. We are not here con-

990

fronted with a case where it was impossible to remove the broken drill stem. The contract obligation was capable of being performed and at a cost less than the contract price agreed to be paid for the drilling of the well. This cost is therefore defendant's measure of damages. Covington Oil Company v. Jones, Tex.Civ.App., 244 S.W. 287; Henry Oil Co. v. Head, Tex.Civ.App., 163 S.W. 311; 4 Summers Oil and Gas, § 689, p. 107.

Under the contract as made by the parties, it was clearly contemplated that upon completion of the deepening operations, the defendant should have a clean hole, and the fact that after the drill stem was removed the well could not be, or was not, deepened, and did not produce oil or gas, can make no difference in the legal situation. Under the contract, after the driller had drilled as deep as he could by the exercise of reasonable care and diligence, the owner of the lease had the right to decide whether or not he would attempt to further deepen the well, with a different driller or different equipment, and attempt to make a producer out of it, or come back up the hole and attempt production at a lesser depth. It is well settled that the belief of a driller that no production can be obtained from a well does not excuse his non-performance of contractual obligations with reference to the drilling of the well. The fact that it was afterwards determined that a well would not produce likewise fails to excuse non-performance of a contractual obligation. Covington Oil Co. v. Jones, supra.

The defendant inferentially suggests that he should be relieved of the item of $960 of the judgment rendered against him, as this recovery was allowed plaintiff as compensation for the defendant's use of the rig in completing that which the plaintiff was legally obligated to do. Under the jury's findings, the retention of the rig by the defendant was wrongful and amounted to a tort. The contract did not give the defendant the right to appropriate plaintiff's rig to complete the contract. Plaintiff's breach of contract can not relieve defendant of his tort liability. Furthermore, the judgment rendered here must be based upon the findings of the jury, and we are unauthorized to consider the finding on the rental value of the rig to plaintiff as a part of the reasonable costs of completing the contract to defendant.

Our holding that defendant is entitled to recover the cost of completing the contract precludes a recovery for the value of the drill, pipe and equipment recovered from the well and delivered to plaintiff, as the recovery allowed compensates defendant for his loss as a result of plaintiff's breach of contract.

What has been said makes unnecessary a discussion of other matters mentioned in the briefs of the parties. The judgment of the trial court is reversed and judgment here rendered for the defendant in the sum of $337.31, which is the difference between the amount awarded to plaintiff by the trial court's judgment, and the amount here awarded to defendant.