Victor NEMEROFF, Ted Horwich, F. W. Straus, Stanley A. Kaplan, Julian D. Weiss, H. Barry McCormick, McCormick and Henderson, Inc., Ruth Shillestad, Charles J. Ademec and Edith Ademec, Herbert K. Hulson and Lela Hulson and Dean Terrill, (Intervenors), Plaintiffs in Error,

v.

CORNELISON ENGINE MAINTENANCE COMPANY, a corporation, (Plaintiff), Defendant in Error.

No. 39158.

Supreme Court of Oklahoma.

Jan. 16, 1962.

Rehearing Denied Feb. 20, 1962.

Application for Leave to File Second Petition for Rehearing Denied March 27, 1962.

Monnet, Hayes, Bullis, Grubb & Thompson, by Russell Thompson, Oklahoma City, for plaintiffs in error.

James W. Pipkin, Seminole, C. E. Mitchell, Pawnee, for defendant in error.

PER CURIAM.

Plaintiffs in error will be referred to as Intervenors and defendant in error, Cor-

nelison Engine Maintenance Company will be referred to as Cornelison.

Cornelison commenced its action to secure a personal judgment against Transempire Drilling Company and to foreclose a lien upon an oil and gas lease. Transempire did not defend and was declared to be in default. Before judgment was entered, Intervenors were permitted to intervene and filed their petition in intervention.

The petition in intervention alleged that Intervenors were the owners of the leasehold estate but they did not take the position that Cornelison had either constructive or actual knowledge of such ownership or that Cornelison had either actual or constructive knowledge that Transempire Drilling Company was not the owner of the leasehold estate when the materials were furnished and the labor performed. On trial of the case their attorney stated that the only issue is whether the labor performed and the material furnished by Cornelison were of a lienable kind, and if under the circumstances they were lienable, Cornelison would be entitled to a lien covering the Intervenors' title to the leasehold.

A personal judgment was entered against Transempire and the court adjudged a lien upon the oil and gas leasehold estate and ordered and decreed that the lien be foreclosed. Intervenors appeal from that part of the judgment which decreed a lien and that the same be foreclosed.

Cornelison alleged that it filed its petition in lieu of filing a lien statement; that Transempire Drilling Company was the owner of the leasehold estate and that it entered into an oral agreement with Transempire to furnish certain material and perform certain labor necessary in the drilling and producing of a well for oil and gas purposes upon the leasehold estate; that Cornelison did furnish such labor and materials. Attached to the petition were the invoices for such labor and materials which set forth the following:

| No. | Date | Amount | |
|---|---|---|---|
| 5992 | March 21, 1959 | $75.22 | (Work done at location in checking and repairing engine) |
| 6100 | April 13, 1959 | 46.80 | (Work on engine at the location) |
| 6120 | April 18, 1959 | 295.21 | (Taking engine to shop and repairing in shop) |
| 02982 | April 23, 1959 | 25.06 | (Fan belts for engine) |
| 6239 | May 23, 1959 | 2336.00 | (Repair of engine in Cornelison's shop) |
| 6378 | June 19, 1959 | 89.24 | (Repair of engine at location) |
| Total | | $2867.53 | |

Intervenors first contend that Cornelison is not entitled to a lien for work performed and labor furnished in the repairing of a drilling rig which was not part of and did not become a part of the leasehold estate.

In this connection Intervenors urge that Invoice No's. 6120 and 6239, totalling $2631.21, were for repair work done in Cornelison's shop and off the lease location and under authority of Arkansas Fuel Oil Co. v. McDowell, 119 Okl. 77, 249 P. 717, 720, such would not constitute a lien. In the Arkansas Fuel Company case we said:

"We do not think the rule applies to one who repairs the machinery or dresses tools off the premises, as such machinery or tools might be used on any one or a number of leases, and the

lien would be migratory in its nature and follow the tools or machinery from place to place, and this, we do not think, falls within the intent of the statute."

Although the above rule may have been applicable in the above case, we do not believe it should be applicable under any and all circumstances. To follow such rule as a matter of law, would mean that a lien attaches only if labor and materials are furnished at the lease location and a lien would not attach if it became necessary to remove equipment from the leased premises to furnish labor and materials. Such rule would not be in harmony with either the Arkansas Fuel Oil Co. case, supra, or with our oil and gas well lien statute, being Title 42 O.S. 1951 § 144. The applicability of such rule depends upon the circumstances.

In the Arkansas Fuel Oil Co. case the alleged lien was for "dressing" tools in the alleged lienholder's shop located off the leased premises. There is nothing indicating that the "dressed" tools were at the time used exclusively on the leased premises or that they were ever returned to the leased premises. The tools were merely part of the alleged leaseholder's equipment and had been used on the premises.

In the instant action Cornelison had performed the conditions of its contract with Transempire Drilling Company, the owner of the leasehold estate; labor and materials had been furnished in repairing the engine on the leased premises; the repaired engine had been used on the leased premises; it became necessary to remove the engine to make further repair; the engine was returned to the leased premises after the repairs had been made, the repairs were necessary for the further development of the lease. It is common knowledge that all work necessary for tearing down and overhauling an engine used on a large drilling rig cannot at all times be done at the lease location and it is often necessary that the work be done in a properly equipped shop. We hold that under the circumstances in the case at bar, the lien attached for labor and material furnished, even though such were furnished off the leased premises. See William M. Graham Oil & Gas Co. v. Oil Well Supply Co., 128 Okl. 201, 264 P. 591.

Intervenors next contend that Cornelison is not entitled to a lien for work performed on the engine at a time subsequent to the date the engine was ever used on the leasehold estate. Intervenors urge that Invoices No. 6239 for $2336.00 and No. 6378 for $89.24, were for labor and material on the engine after it was used on the leased premises and that the engine was never used on the leased premises after such labor and material were furnished.

The evidence discloses that the engine had been used in Transempire's drilling operations on Transempire's leasehold estate and that it was necessary to repair the engine before further development; that the engine was repaired by Cornelison so that the lease owned by Transempire could be further developed and the same was returned to the lease for this purpose; that Transempire would have further developed the lease had it had sufficient funds; that the engine remained on the leased premises for approximately 90 days.

In the case of William M. Graham Oil & Gas Co. v. Oil Well Supply Co., supra, we said:

"* * * To hold that the statute gives to the one a lien for commodities furnished which become a part of the property, either by consumption in the use thereof, or by attachment as a part of the equipment or machinery or otherwise, and that it denies to the other who likewise furnished commodities equally as essential and necessary as furnished by the one, though such commodities furnished by the other be not consumed nor become a part of the properties developed by attachment, and retain individuality, and be capable of further use upon completion of the immediate purposes for which they were purchased, is to say that the law-making body of the state acted in a

most discriminatory manner in the enactment of the statute, when it is known as a matter of common knowledge that a large quantity of such necessary and essential commodities never become a part of the leasehold either by consumption or attachment thereto. * * *"

While the engine and drilling rig were never used on the lease after the labor was performed and the parts furnished in overhauling and repairing the engine, and the engine returned to the lease, we hold such labor and parts were furnished for the further development of the lease although, through no fault of Cornelison, the same was never again used on the lease. Therefore, Cornelison is entitled to a lien for the labor performed and the parts furnished.

Finding no error in the record, the judgment of the trial court is affirmed.

Upon the prayer of the defendant in error, judgment is entered herewith against National Surety Corporation, surety for plaintiffs in error, on the supersedeas bond.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

WELCH and BERRY, JJ., dissent.

The Court acknowledges the aid of Supernumerary Judge, N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

BERRY, Justice (dissenting).

I am unable to agree with the majority opinion.

It is provided in the applicable lien statute (42 O.S.1951 § 144), that "Any person * * * who shall, under contract, * * * with the owner of any lease-hold for oil and gas purposes, * * * or with the trustee or agent of such owner, perform labor or furnish material, machinery and oil well supplies *used* in the digging, drilling, torpedoing, completing, operating * * * of any oil and gas well, or who shall furnish * * *, or perform any labor in constructing or putting together any of the machinery *used* in drilling, * * * shall have a lien upon the whole of such leasehold * * * or lease for oil and gas purposes" etc.

To my way of thinking, by force of the clear wording of Sec. 144, no charge asserted by Cornelison is lienable unless it was for labor, material, machinery or supplies *used* upon the lease.

It stands admitted that the drilling rig was not being used upon the lease in May, 1959, when Cornelison repaired in its shop the engine thereto, for which services it charged $2,336.00. Nor was it thereafter used upon the leasehold, therefor, when the charge of $89.24 was made for repairing the engine at the lease.

In an effort to escape the plain wording of the statute, Cornelison argues that "it was repairing the equipment which was worn out or used up due to drilling three wells on the leasehold estate. The drilling rig and its motor repaired by Cornelison was thus 'used' within a liberal construction of the lien laws of this State."

The evidence fails to show that the repairs to the engine were necessary because it was "worn out or used up" on the lease. If the evidence did so show, I nevertheless, would be unable to agree with Cornelison's line of reasoning. The statute is directed to and contemplates a using of labor, material, machinery or supplies upon the lease that are furnished by the person asserting a lien and not a prior use upon the lease of property by a person who incurred the indebtedness that forms the basis of an asserted lien. If the engine was worn out or used up on the lease, such wearing out and using up was on the part of the driller and not Cornelison.

I am of the further opinion that charges made for repairing the engine at the shop and for the fan belt are not lienable. See

608

Arkansas Fuel Oil Co. v. McDowell, Okl., 119 Okl. 77, 249 P. 717.

I am convinced that the only charges which could become a lien on the lease are those for work on the engine during the time same was used on the lease, which charges aggregate $122.02.

For reasons stated, I respectfully dissent from the majority opinion.